FRANK ARGUETA *et al.*, Plaintiffs-Appellees, v. BALTIMORE AND OHIO CHICAGO TERMINAL RAILROAD COMPANY, Defendant-Appellant (Parsec, Inc., *et al.*, Defendants and Third-Party Plaintiffs-Appellees and Separate Appellants; Paceco, Inc., Third-Party Defendant and Separate Appellee).

First District (4th Division)    No. 1—89—2813

Opinion filed December 19, 1991.

12

14

Thomas L. Hogan, of Gorham, Metge, Bowman & Hourigan, of Chicago, for appellant.

Richard S. Fleisher and Matthew I. Baker, both of Karlin & Fleisher, and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellees Frank Argueta and Barton Kohl.

Algimantas Kezelis, Russell P. Veldenz, and Terence R. Selby, all of French, Kezelis & Kominiarek, P.C., of Chicago, for appellees Parsec, Inc., and Transpersonnel, Inc.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Lydon C. Molzahn, and Christine L. Olson, of counsel), for appellee Paceco, Inc.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Frank Argueta and Barton Kohl, employed as carmen by the Baltimore & Ohio Chicago Terminal Railroad (B&OCT), were injured on the job while riding in the cab of a gantry crane when a spindle pin attaching one of the crane's wheels fractured, causing the wheel to snap off and the crane to collapse.

The plaintiffs brought an action against B&OCT under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1988)) alleging that B&OCT failed to provide a safe work place. The plaintiffs also sued Parsec, Inc., whose employee was operating the crane at the time of the accident.[1]

B&OCT filed a cross-complaint against Parsec, Inc., for contribution and contractual indemnity. Parsec, Inc., filed a third-party action

---

[1] The plaintiffs settled with Calumet Machine, Inc., the manufacturer of the spindle pin, before trial. The plaintiffs also sued Transpersonnel, Inc., which supplied crane operators to Parsec, Inc. Transpersonnel was granted a directed verdict after a finding that Transpersonnel had no control of the crane operators once they were employed by Parsec.

under the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) against Paceco, Inc., the manufacturer of the crane.

The jury found that B&OCT and Parsec were both negligent and awarded $269,591.38 to Kohl and $1,986,246.59 to Argueta. During jury deliberation, but before the jury returned its verdict, Parsec settled with both plaintiffs for $150,000. After the verdict, the court entered judgment solely against B&OCT and denied B&OCT's motion to enter judgment against Parsec pursuant to the contractual indemnity agreement.

After all of the evidence had been presented, the court severed the closing arguments and jury deliberation in the third-party action from the main action. Accordingly, the jury returned a separate verdict and found Paceco not liable to Parsec for contribution.

B&OCT appeals from the judgment entered on the jury verdict in favor of the plaintiffs and alleges numerous trial court errors. B&OCT contends that the trial court erred in failing to apply FELA substantive law at trial, specifically, with regard to jury instructions on damages, the admission of the plaintiffs' medical expenses, and the treatment of an economist's testimony at trial. B&OCT further asserts the trial court erred by refusing to admit several pieces of proffered evidence directed at B&OCT's liability. Finally, B&OCT appeals on the ground that Parsec's settlement with the plaintiffs was not in good faith and the trial court erred by refusing to grant B&OCT's contractual indemnity claim against Parsec.

Parsec also appeals from the jury's separate verdict in favor of Paceco and contends that the verdict was against the manifest weight of the evidence and was the result of jury prejudice and bias. Parsec also alleges that the trial court erred in excluding relevant evidence.

The plaintiffs, Frank Argueta and Barton Kohl, were employed as carmen helpers for B&OCT and worked at the Forest Hill yard in Chicago. At Forest Hill, tractor trailers are loaded and unloaded from railroad flatbed cars by using cross-gantry overhead cranes. The cranes are approximately 40 feet tall and 65 feet wide and travel on four wheels by way of concrete pads parallel to the railroad tracks. To move from one set of tracks to another, the crane must travel across specifically delineated crossing pads at the north end of the yard. Lift beams are attached to the trolley of the crane and are designed to lift trailers from the railroad cars. At either end of the crane, two cabs are attached which serve to carry crane operators.

In January 1985, B&OCT signed a contract with Parsec, Inc., in which Parsec agreed to supply operators for the overhead cranes.

Parsec was in charge of hiring, firing, and supervising the operators. B&OCT gave the crane operators written instructions for safe operation of the cranes. The instructions mandated that when crossing from one set of tracks to another, the operator must position the lift beam against the mechanical stops in the direction in which the crane was moving.

When driving a crane, the crane operator was normally assisted by B&OCT carmen. Due to the poor visibility inherent to the size of the crane, the carmen would sit in the cab opposite the operator and would advise him of any obstructions in the crane's path.

On July 23, 1985, plaintiffs Argueta and Kohl were assisting Charles Chrisos, the Parsec employee who was operating B&OCT's crane No. 283. Argueta and Kohl were seated in the east cab of the crane as Chrisos was driving the crane and seated in the west cab. When traveling across the crossing pad, Chrisos struck a pothole which measured three feet wide and four to five inches deep. At this point, the crane began to shake, the steel spindle pin attaching the northwest wheel onto the crane fractured, the wheel snapped off the crane, and the crane collapsed. Chrisos, seeing the imminent accident, kicked out the window in his cab and jumped out. Argueta and Kohl sustained injuries for which they received medical treatment. Kohl returned to work within six weeks. Argueta's back injuries have prevented him from returning to work for B&OCT.

Evidence was presented at trial that the presence of potholes in the railroad yard, the failure to test the spindle pins of the crane's wheels more frequently, the rough operation of the crane, and the fact that the lift beam was not in the proper position as Chrisos was traveling across the crossing pad were all factors which contributed to the spindle-pin fracture and the subsequent collapse of the crane.

## I. FELA ISSUES

The first issue which B&OCT raises on appeal is that the trial court committed reversible error by refusing its proffered jury instruction that any damage award would not be subject to income tax. B&OCT argues that since the plaintiffs' action against the railroad was brought under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1988)), it was entitled to this instruction, as it is mandated under Federal law. See *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755.

The plaintiffs do not dispute the fact that a defendant sued under FELA is entitled to this instruction. However, the plaintiffs assert

that the presence of a common-law defendant, Parsec, in the lawsuit precluded B&OCT from its entitlement to the instruction.

The plaintiffs rely on the Illinois Supreme Court's decision in *Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 475 N.E.2d 857, a common-law case, which held it was reversible error to give a jury instruction that a compensatory damage award is not taxable.

■■■ It is well settled that questions concerning the measure of damages in FELA actions are Federal in character, even if the action is brought in State court, and must be settled according to general principles of law as administered in the Federal courts. (See, *e.g., Monessen Southwestern Ry. Co. v. Morgan* (1988), 486 U.S. 330, 100 L. Ed. 2d 349, 108 S. Ct. 1837; *Chesapeake & Ohio Ry. Co. v. Kelly* (1916), 241 U.S. 485, 60 L. Ed. 1117, 36 S. Ct. 630.) Moreover, the United States Supreme Court has held that it is reversible error for a State trial court in an action brought under FELA to refuse to give the requested instruction on the taxability of damages. (*Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 498, 62 L. Ed. 2d 689, 696, 100 S. Ct. 755, 759.) The Supreme Court reasoned that a jury may not be aware of the provisions in the Internal Revenue Code which provide that damages received for personal injuries are not taxable income and the jury may unnecessarily increase the plaintiff's award in order to insure that the injured party is fully compensated. (*Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 496, 62 L. Ed. 2d 689, 695, 100 S. Ct. 755, 759.) The Court further stated that the instruction "would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages." *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 498, 62 L. Ed. 2d 689, 696, 100 S. Ct. 755, 759-60.

■ The Illinois Supreme Court in *Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 475 N.E.2d 857, had occasion to disagree with the reasoning in *Liepelt* in a case which involved purely State law. In its ruling on the propriety of the trial court's decision to give a *Liepelt* instruction on damages in a wrongful death action brought under Illinois law, the court expressed its belief that "proof of pecuniary loss *** should not be rendered more complex by injecting the question of income tax or other extraneous factors." (*Klawonn*, 105 Ill. 2d at 458, 475 N.E.2d at 861.) While the court agreed that *Liepelt* established that in FELA actions, upon request, the jury must be instructed that any damages awarded are not subject to taxation, the court held that in an action involving "purely State law," an instruction on the non-

taxability of damages, given over the plaintiff's objection, was reversible error. *Klawonn*, 105 Ill. 2d at 456, 475 N.E.2d at 860.

We believe that the Illinois Supreme Court's holding in *Klawonn* is limited to actions based solely on State law. In an action such as the one before us, where a plaintiff chooses to join Federal and common-law actions in one lawsuit, Federal law and its construction by the United States Supreme Court cannot be ignored. The supremacy clause of the United States Constitution requires preemption of State laws or common-law standards which conflict with Federal statutes and the execution of their full objectives. U.S. Const., art. VI, cl. 2; see also *Papas v. Upjohn Co.* (11th Cir. 1991), 926 F.2d 1019.

In the case at bar, the plaintiffs cannot reap the benefits derived from pursuing one defendant under a Federal statute, and then selectively eliminate unfavorable portions of the statute by relying on the presence of another defendant whom the plaintiff has sued under State law. The FELA instruction does not adversely affect the common-law defendant, nor does the instruction confuse the jury since any damages for which the common-law defendant may be responsible are ultimately nontaxable as well.

For the reasons set forth, we find that the trial court erred in failing to instruct the jury on the nontaxability of damages as mandated by the Federal statute and construed by the United States Supreme Court.

For this error, B&OCT requests a new trial on damages only. However, the plaintiffs contend that this court should not consider any of the errors which B&OCT has raised relating to the issue of damages. The plaintiffs argue that B&OCT has waived its right on appeal to seek a new trial on damages since in its post-trial motion, B&OCT only requested a judgment notwithstanding the verdict or, in the alternative, a new trial.

A request for a new trial on certain aspects of a case is included in a request for a new trial. (*Carter v. Chicago & Illinois Midland Ry. Co.* (1988), 168 Ill. App. 3d 652, 522 N.E.2d 856.) While a post-trial motion must state the relief desired (Ill. Rev. Stat. 1985, ch. 110, par. 2—1202(b)), it is also clear that the legislature intended the Code to be liberally construed with the ultimate objective of resolving controversies according to the substantive rights of the parties. Ill. Rev. Stat. 1985, ch. 110, par. 1—106; 107 Ill. 2d R. 2(a).

In a case such as the one before this court, in which B&OCT seeks lesser relief from the reviewing court than the relief which was requested in the post-trial motion, we believe that waiver is not at issue. By requesting a new trial in its post-trial motion, B&OCT has es-

sentially requested both a new trial on liability and a new assessment of damages.

For the foregoing reasons, we find that B&OCT is entitled to a new trial on the issue of damages. Since this will be retried using FELA substantive law, we do not reach B&OCT's issues regarding the plaintiffs' medical expenses and the trial court's treatment of the testimony of the plaintiffs' economist.

## II. EVIDENTIARY ISSUES

B&OCT further contends that the trial court erred in refusing several pieces of proffered evidence. The first challenge pertains to ultrasonic test reports of the spindle pins. Prior to the accident, Calumet Testing Services, Inc., and Conam Inspection performed the tests at the request of B&OCT as a part of B&OCT's routine testing of the spindle pins. Calumet and Conam recorded their findings and submitted the reports to B&OCT. The trial court refused to admit the reports under the business record exception to the hearsay rule, reasoning that the reports were generated by the third parties, Calumet Testing Services, Inc., and Conam, and therefore, were not B&OCT's business records.

B&OCT argues that the failure of the trial court to admit the reports into evidence allowed the jury to assume that B&OCT was negligent in failing to test the spindle pins and prevented B&OCT from defending its action on the basis that it took reasonable steps to provide a safe place to work.

■ Supreme Court Rule 236 provides for the admission of business records "made in the regular course of any business" as an exception to the hearsay rule. (107 Ill. 2d R. 236(a).) At issue is under what circumstances does a document, produced by a third party, become a business record of the party seeking to introduce it.

A number of Illinois cases have held that documents produced by third parties were inadmissible as business records. In each of these cases, the documents were not commissioned by the business seeking to introduce them into evidence, albeit the documents were retained in the business files. *International Harvester Credit Corp. v. Helland* (1986), 151 Ill. App. 3d 848, 503 N.E.2d 548 (minutes of board of director's meeting of a company were not the business records of a second company); *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858 (letter from a manufacturer was not the business record of a second manufacturer); *Benford v. Chicago Transit Authority* (1973), 9 Ill. App. 3d 875, 293 N.E.2d 496 (a note made

by employee's private physician was not the business record of employer).

By contrast, a business report generated by a third party has been held to be admissible when it was commissioned in the regular course of business of the party seeking to introduce it. *Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 487 N.E.2d 798 (survey of an engineering firm commissioned by county admissible as business record of the county).

■ The key consideration is the authority of the third party to act on the business' behalf. Where a third party is authorized by a business to generate the record at issue, the record is of no use to the business unless it is accurate and, therefore, the record bears sufficient indicia of reliability to qualify as a business record under the hearsay rule. See also *NLRB v. First Termite Control Co.* (9th Cir. 1981), 646 F.2d 424; Fed. R. Evid. 803(6); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.10, at 647 (5th ed. 1990).

Accordingly, we find that the trial court erred in its ruling that the ultrasonic test reports were inadmissible. The reports were the business records of B&OCT. Although the reports were generated by Calumet and Conam, the tests were performed at the direction of the railroad in the regular course of its business.

However, we believe that the failure to admit the ultrasonic testing reports was harmless error. The jury heard sufficient other testimony that the spindle pins were regularly tested at the direction of the railroad. B&OCT's assistant foreman testified to the frequent inspection of the cranes and spindle pins. The railroad's mechanical superintendent testified that the pins were ultrasonically tested at three-month intervals. Thus, the ultrasonic testing reports would have merely been cumulative evidence on the issue of B&OCT's negligence.

■ B&OCT next objects to the trial court's refusal to admit test results on the fractured spindle pin following the accident. The railroad's metallurgist engineer tested the pin and issued a report which showed that the pin had not been manufactured according to specifications. The trial court denied admission of this report because the pin was not available to other parties prior to trial. B&OCT alleges that the pin was inadvertently destroyed, and since there was no evidence that the pin was intentionally destroyed, the trial court was obligated to allow the report into evidence. B&OCT also claims that the plaintiffs were not prejudiced by the loss of the pin.

We believe the trial court did not abuse its discretion in barring the admission of B&OCT's metallurgist's report. A trial court is not required to find that a party intentionally destroyed evidence in order

for the court to bar testimony regarding that evidence. (See, *e.g., Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) At the time the pin was lost, B&OCT was aware of an impending lawsuit. The trial court had discretion to conclude that the other parties in the suit were prejudiced by their inability to conduct tests of their own on this material piece of evidence.

■ Finally, B&OCT contends that the trial court erred in refusing to allow statements from Transpersonnel's cross-complaint against Parsec. Transpersonnel sought contribution and indemnity from Parsec and alleged in its complaint that Parsec failed to instruct the crane operator and that the operator negligently operated the crane. B&OCT argues that these statements should have been read into evidence as admissions against interest against both Parsec and Transpersonnel. B&OCT alleges that the court's failure to allow this evidence constitutes reversible error. Since the cross-complaint was ultimately dismissed, and Transpersonnel was granted a directed verdict, Parsec responded to this contention.

Since admissions are statements made by a party and Parsec did not make the statement at issue, we find no merit to B&OCT's assertion that the statements contained in Transpersonnel's pleading should have been read to the jury as an admission against Parsec.

### III. PARSEC ISSUES

B&OCT filed a cross-claim against Parsec seeking contribution in the event the jury found B&OCT liable to the plaintiffs. After the jury began its deliberations, but before the jury returned its verdict, counsel for Parsec notified the court that Parsec and the plaintiffs had reached a settlement agreement of $150,000 and requested the court to issue a finding of good faith. The court considered the arguments of counsel and found that the settlement agreement was in good faith.

B&OCT now contends that the trial court erred in its finding. B&OCT argues that since the settlement did not occur until the end of the four-week trial, and the railroad was prejudiced by virtue of Parsec's involvement in the trial, the settlement was in bad faith.

■ The Illinois Supreme Court has stated that to determine whether a settlement agreement has been entered into in good faith, courts must take into account the entire circumstances surrounding the settlement. (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373.) Once a preliminary showing of good faith is made, the burden shifts to the party opposing the settlement to prove by clear and convincing evidence that the settlement is invalid. (*McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d

157.) The circuit court is allowed broad discretion in determining what is required for a finding of good faith. (*Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 537 N.E.2d 871.) The trial court must often rely on its own experience to determine whether a settlement is proper since good or bad faith is a question of fact in each case. *Wasmund v. Metropolitan Sanitary District of Greater Chicago* (1985), 135 Ill. App. 3d 926, 482 N.E.2d 351.

■ At the time of settlement, the court in this case had presided over a four-week trial and, armed with a thorough understanding of the case, was in the best position to assess whether the parties were negotiating in good faith. There is no evidence to support a finding that the plaintiffs retained Parsec in the suit in order to impede the presentation of the railroad's defense. Moreover, the record contains no evidence of collusion or fraudulent conduct by the parties to the settlement agreement. (See *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) The sole fact that the settlement was reached at the end of trial does not support a finding of collusion.

B&OCT has failed to establish, by clear and convincing evidence, that Parsec's settlement with the plaintiffs was in bad faith. Thus, there is no basis here to disturb the circuit court's finding of a "good faith" settlement; the dismissal of B&OCT's cross-claim for contribution accordingly must be affirmed.

B&OCT's second contention regarding Parsec addresses the fact that following Parsec's settlement with the plaintiffs, and after the jury returned its verdict, the trial court entered judgment solely against B&OCT. B&OCT maintains that since the jury found that Parsec was negligent as well, the trial court erred in amending the substance of the verdict. B&OCT asserts that it is consequently entitled to a judgment notwithstanding the verdict because the judgment, as entered, is void and unenforceable.

We disagree. B&OCT relies on *Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 415 N.E.2d 643, for the proposition that an amendment of a jury verdict is only permissible when the defect is one of form, rather than substance. B&OCT alleges that in the case at bar, the trial judge's entry of a judgment solely against B&OCT constitutes a substantive, impermissible amendment.

■ However, as the *Anderson* case explains, an amendment of a jury verdict becomes substantive when the trial court changes the verdict in such a way as to no longer reflect the outcome which the jury determined. In other words, a trial judge cannot modify a jury's

verdict of "guilty" to "not guilty" because the judge believes that this is the outcome the jury should have reached.

In the case at bar, we believe that the judge's entry of a verdict against B&OCT after Parsec had reached a settlement with the plaintiffs did not amount to a substantive amendment of the jury's verdict. The Illinois Contribution Act dictates that once a jury verdict has been entered against two joint tortfeasors and the plaintiff settles with one of them, the nonsettling tortfeasor is entitled to a setoff in the amount of the settlement and is liable for the remaining judgment. (Ill. Rev. Stat. 1985, ch. 70, par. 302(c).) If the trial court had entered judgment against both B&OCT and Parsec, the court would have then entered a satisfaction of the judgment against Parsec in the amount of settlement and would have respectively modified the judgment against B&OCT to reflect the setoff. Thus, by entering judgment solely against B&OCT and later modifying the amount of damages to reflect the settlement, the end result was ultimately the same.

Finally, B&OCT challenges the court's failure to enter judgment against Parsec pursuant to an indemnification agreement between Parsec and B&OCT. B&OCT argues that the court's ruling should be reversed and the case remanded, with directions to enter judgment against Parsec for the entire verdict, attorney fees, and property damage.

The indemnification clause in the contract between Parsec and B&OCT provided:

Parsec agrees:

"(a) To indemnify, protect, defend and save harmless B&O from and against all loss, damages, costs and expenses, including attorneys' fees, claims, demands and causes of actions on account of—

(i) Injury to or death of all persons (including, but not limited to, employees of the Contractor and the B&O), and loss of or damage to any property, including property of the B&O, caused by or resulting in any manner from any acts, omissions or negligence of the Contractor or any of the Contractor's officers, agents or employees, in performing or failing to perform any of the services or duties on the part of the Contractor to be performed under this Agreement."

B&OCT contends that the "clear and explicit" reference in the agreement to indemnification for claims for injuries to railroad employees establishes the intent of the parties to provide indemnification even in a case where B&OCT was concurrently liable under FELA.

■■ It is well settled in Illinois that indemnity contracts are to be strictly construed. Since *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, Illinois courts have consistently held that indemnification contracts will not be construed as indemnifying against a party's own negligence unless such construction is required by clear and explicit language of the contract or such an intention is expressed in unequivocal terms. *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93; *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469.

We find that strict construction of the indemnity provision in Parsec's contract with B&OCT can only lead us to conclude that Parsec agreed to indemnify B&OCT for damages arising from Parsec's own negligence, and not that of B&OCT. The contract explicitly states that Parsec agreed to indemnify B&OCT for "any acts, omissions or negligence of the *Contractor*." (Emphasis added.)

We further find that B&OCT's reliance on *Duffield v. Marra, Inc.* (1988), 166 Ill. App. 3d 754, 520 N.E.2d 938, is misplaced. In *Duffield*, a railroad employee brought an action against a railroad under the Federal Employers' Liability Act to recover for injuries sustained when he slipped while crossing the parking lot of a motel in which he was lodging during the course of employment for the railroad. The court upheld an indemnity agreement between the motel and the railroad which provided that the motel would indemnify the railroad for injuries arising out of the use and occupancy of their motel rooms by railroad employees. Unlike the case at bar, the employee's injuries were actually caused by the acts or omissions of the motel. The court found that the railroad's liability was "merely constructive or derivative," arising under FELA for the railroad's failure to inspect the motel premises. (*Duffield*, 166 Ill. App. 3d at 764, 520 N.E.2d at 945.) Thus, the court concluded, the railroad was not seeking to require the motel to "shoulder the liability for the Railroad's negligence, but to take responsibility for its own wrongdoing." *Duffield*, 166 Ill. App. 3d at 764, 520 N.E.2d at 945.

■■ The jury's finding of B&OCT's negligence was not constructive or derivative. B&OCT was found negligent for its own acts and omissions which contributed to the accident, namely, its failure to repair potholes on the cement surfaces over which the cranes travelled, and its failure to replace and adequately inspect the crane's spindle pins. B&OCT's contention that Parsec should shoulder the liability for its own negligence, absent a clear expression of such an intent in the indemnification agreement, must fail.

### IV. *PARSEC v. PACECO*

As we mentioned earlier in this opinion, Parsec filed a third-party action against Paceco, the manufacturer of the crane, seeking contribution for Parsec's potential liability to the plaintiffs. After all of the parties presented their cases, the trial court severed the closing argument and jury deliberation in the third-party action. The jury returned a verdict in favor of Paceco, finding it was not liable to Parsec for any amount of contribution. Parsec appeals the jury's finding as against the manifest weight of the evidence and further contends the jury verdict was the result of prejudice and bias, and the trial court erred in excluding certain evidence.

■■■ To begin, in response to Parsec's appeal from the jury verdict, Paceco alleges that, as matter of law, Parsec is not entitled to contribution. Paceco bases its assertion on a statement in Parsec's brief, namely, Parsec's statement that it "paid its pro rata share of the judgment."

Paceco contends that since contribution exists only in favor of a tortfeasor who has paid more than its pro rata share of the common liability, Parsec's statement serves as a judicial admission precluding it from seeking contribution.

We find Paceco's argument to be without merit. Parsec's statement, upon which Paceco relies, must be read within the context of its intended meaning. Parsec was responding to B&OCT's allegation of trial court error and arguing that B&OCT had not been prejudiced by the alleged error because Parsec had ultimately settled with the plaintiffs and "paid its pro rata share of the judgment." Thus, when read within the context of its intended meaning, Parsec's statement is not a judicial admission precluding Parsec's action against Paceco for contribution.

■■■ Parsec's initial contention is that the jury verdict in favor of Paceco was against the manifest weight of the evidence. Parsec argues the jury ignored evidence that Paceco failed to adequately design its spindle pins, failed to design a control system which would prevent the crane from moving with the lift beam in an inappropriate position, failed to warn users of the potential for crane collapse in the event of a pin failure or if the lift beam was in the wrong position, and failed to incorporate dead legs into the crane to prevent crane collapse in the event of a pin fracture.

A reviewing court will not set aside a jury verdict on the ground that it is contrary to the manifest weight of the evidence unless it is obvious that the jury arrived at the wrong conclusion. (*Derrico v.*

*Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345.) We believe the jury's finding for Paceco was not against the manifest weight of the evidence for the reasons below.

The record reflects and the parties agree to the fact that the spindle pin which failed in the accident was not manufactured by Paceco, but rather was made by Calumet Machine and Welding Company according to specifications which B&OCT provided Calumet. Therefore, it cannot be said that Paceco's failure to design a proper spindle pin was a proximate cause of the accident.

As for Paceco's failure to design a control system to prevent the crane from moving with the lift beam in the wrong position, it is clear from the record the jury heard testimony that Paceco's operating instructions, as well as B&OCT's rules, specifically dictated the appropriate position for the lift beam. The record also establishes the jury heard testimony that Parsec's employee was not operating the crane according to Paceco's and B&OCT's instructions. The evidence supports the jury's finding that Parsec's employee's failure to follow instructions, and not Paceco's failure to install a control system, contributed to the accident.

As for Paceco's failure to warn of the potential for crane collapse, a duty to warn is not required where a product is not defectively designed or manufactured. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.) There is no evidence in the record to support the proposition that the crane designed by Paceco, and purchased by B&OCT in 1967, was defectively designed or manufactured. On the contrary, the jury heard evidence that the crane had been manufactured according to industry standards. Therefore, as a matter of law, Paceco did not have a duty to warn of a potential for crane collapse.

Finally, Parsec contends the jury ignored evidence that Paceco did not install "dead legs" onto its cranes which could have prevented the crane from tipping over. Paceco's expert testified that it was not the prevailing industry custom at the time the crane was manufactured to install "dead legs" and the crane, as designed, complied with industry standards. There is also no evidence in the record to support a conclusion that if "dead legs" had been installed, the crane would not have collapsed.

Next, Parsec contends the trial court erred in granting Paceco's motion *in limine* to exclude a photograph of B&OCT's crane which replaced crane No. 283 after the accident. Because the replacement crane had "dead legs," Parsec contends that the photograph would have assisted the jury to understand the nature of "dead legs," the

feasibility of their installation, and whether they would have prevented the crane from collapsing.

The decision whether to admit or exclude photographic evidence is reserved for the discretion of the trial judge. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 541 N.E.2d 643.) Furthermore, a photograph is admissible if it has a reasonable tendency to prove a material fact in issue and may be excluded if it is irrelevant, immaterial, or if its prejudicial nature clearly outweighs its probative value. *Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705, 414 N.E.2d 885.

Parsec's proffered photograph depicted a crane manufactured after the crane which was involved in the accident and by a company other than Paceco. We agree with the trial court that the fact that a different manufacturer installed "dead legs" on its crane was not relevant to the issue of Paceco's negligence. Also, the jury had already seen a photograph of a crane with "dead legs" for purposes of illustration. Therefore, we believe the trial court did not abuse its discretion in disallowing the evidence as it was not relevant or material to the issue of Paceco's negligence.

Finally, we address Parsec's contention that the jury verdict resulted from prejudice and bias of the jurors after the court improperly severed the closing arguments and jury deliberations of the third-party action. Parsec alleges that because, after a four-week trial, the jury was instructed to return on a Monday to listen to separate closing arguments and deliberate, this "naturally resulted in a mind set against PARSEC." Parsec essentially argues that the jury found in favor of Paceco because the jury blamed Parsec for forcing it to return the Monday following its decision for the plaintiffs.

A motion to sever is addressed to the sound discretion of the trial court and its decision will not be disturbed absent an abuse thereof. (*Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 478 N.E.2d 469.) Further, the order of presentation of evidence at trial rests within the discretion of the trial judge and an abuse of discretion is likely to arise only if the opportunity is denied to impeach witnesses, or to meet new points raised by the opponent. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.1, at 396 (5th ed. 1990).

In the case at bar, we do not believe the trial judge abused his discretion by severing the closing arguments and the jury deliberation in the third-party action. Parsec's assertion that the jury's verdict was a result of bias and prejudice resulting from the severance is not supported by the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County on the principal complaint is remanded for a new trial on damages, and the judgment in the third-party action is affirmed.

Affirmed in part; reversed and remanded in part.

LINN and JOHNSON, JJ., concur.