This case presents a dispute over the construction of an indemnity provision in a product distribution agreement entered into between a manufacturer and a distributor, relating to a front end loader that was claimed to have a defect in design, material, or workmanship that proximately caused the death of a workman on a construction project where the product was being used.
The specific question presented is whether, under the terms of the distribution agreement, the manufacturer was required to indemnify the distributor for the amount the distributor paid to the estate of the deceased workman in settlement of a wrongful death action filed against the distributor by the estate of the deceased workman. The trial court held that, as a matter of law, the distributor, under the facts presented, was legally entitled to indemnity by the manufacturer and entered a summary judgment for the distributor. We reverse and remand.
 FACTS
In 1970, International Harvester Company, now known as Navistar International Transportation Corporation ("Navistar"), entered into a distribution agreement with Northwestern Motor Company ("Northwestern"), also known as Fairmont Railway Motors ("Fairmont"), which later became Harsco Corporation, under which Harsco would manufacture compact loaders (the subject product was a "Bobcat" front end loader) and Navistar would sell them. *Page 1009 
The distribution agreement, entered into on April 20, 1970, contained the following provisions relating to indemnity:
 "(b) [Harsco] agrees to indemnify [Navistar] against any and all claims made by any person, including without limitation, tort product liability and liability for breach of either express or implied warranties, based upon the contention that the Compact Loaders sold by [Harsco] and resold by [Navistar] are or were defective in design, material, or workmanship, provided that (1) this indemnity shall not impose any liability on [Harsco] as the result of any express warranty by [Navistar] or [Navistar]'s dealer or distributor which is more extensive than [Navistar]'s published warranty applicable to Compact Loaders at the time of [Navistar]'s resale, and (2) that [Navistar] shall notify [Harsco] in writing of any claim on which it is seeking indemnity pursuant hereto promptly after receiving notice of such claim and [Harsco] shall, provided that it shall make reasonable provision for full indemnification to [Navistar], have the right by written notice to [Navistar] within 10 days thereafter to elect to take charge of the defense of such claim and shall thereafter have full control of such claim.
". . . .
 "(e) The foregoing paragraphs (a), (b), (c) and (d) shall have no application to parts and/or components supplied to [Harsco] by [Navistar] where it is claimed that any such part and/or component was faulty at the time of the original manufacture, or which have been subjected to design change made by [Harsco] at the instance of [Navistar], where it is claimed such change in design is faulty."
(Emphasis added.)
The Bobcat front end loader that was made the basis of the underlying action alleging the wrongful death of the workman, Larry Franks, was shipped by Harsco to Navistar onSeptember 28, 1971. It was alleged to be defective because it did not have an emergency/parking brake system. Originally, the compact loaders manufactured by Harsco were equipped with a hydrostatic braking system but were not equipped with an emergency/parking brake system. On August 4, 1973, the subject loader was sold by Navistar through its dealer, as it had been delivered by Harsco, the manufacturer, without the incorporation of an emergency/parking brake system.
On or about October 13, 1981, Larry Franks was operating the loader; he was seriously injured on that date and died four days later. On or about October 8, 1982, the estate of Larry Franks filed an action in the Circuit Court of Jefferson County against International (now Navistar) and others, alleging product liability, strict liability, and defective design in the manufacture or design of the Bobcat loader. The basis of the defective design claim was that Harsco, the manufacturer, did not equip the Bobcat loader with an emergency/parking brake system.
Pursuant to the terms of the distribution agreement, Navistar tendered to Harsco the defense of the wrongful death action; Harsco assumed the defense of the action and had controlled the defense for some 30 months, when on January 20, 1986, Harsco tendered the defense of Navistar back to Navistar. Harsco claims that it tendered the defense of the action when, during discovery, it learned that, although Navistar had maintained the component parts for the emergency/parking brake system in its warehouse for more than one year, Navistar had nevertheless sold Franks's employer the subject Bobcat front end loader without installing the parking or emergency brakes.
Harsco subsequently settled with the Franks estate for $40,000, and on or about September 20, 1990, a compromise settlement was reached by Navistar and the estate whereby Navistar, under protest, paid to the estate some $200,000 in compromise of the disputed claims of liability and fault. Navistar notified Harsco that it would file this action seeking to be indemnified for the amounts it had expended, plus attorney fees and costs.
Navistar then sought indemnification by Harsco for the amount of the compromise settlement plus attorney fees and costs of defense. When Harsco refused the Navistar demand for indemnification, Navistar *Page 1010 
brought this action. The trial court, in entering Navistar's summary judgment, held that the indemnity provision in the distribution agreement, as a matter of law, required Harsco to indemnify Navistar for its expenses in settling the litigation and in defending the Franks litigation. Harsco appeals from Navistar's summary judgment.
 I
It is well settled that our review of a summary judgment isde novo, e.g., Maharry v. City of Gadsden, 587 So.2d 966
(Ala. 1991); Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976), and that we take into account the same factors that the trial court considered, Havens v. Trawick, 564 So.2d 917, 919 (Ala. 1990), resolving all reasonable doubts in favor of the nonmovant. Id.
We view all the evidence and entertain all reasonable inferences therefrom in a light most favorable to the nonmovant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc.,583 So.2d 256 (Ala. 1991). The movant has the initial burden of showing that no genuine issue exists as to any material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. If the movant makes this prima facie showing, then the burden shifts to the nonmovant. Eg.,Maharry v. City of Gadsden, 587 So.2d 966, 968 (Ala. 1991). For actions filed after June 11, 1987, the nonmovant must offer "substantial evidence" to overcome the prima facie showing, see
§ 12-21-12, Ala. Code 1975, which means "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
 II
The evidence presented on the motion for summary judgment tends to show that in 1972, new federal regulations had required compact loaders to be equipped with emergency or parking brakes. To meet this requirement and Navistar's subsequent request, Harsco began developing in 1971 a braking system for its compact loaders. Harsco developed and submitted to Navistar a double-disk braking system, which Navistar rejected as being too expensive.
In March 1972, Harsco designed a braking system that met with Navistar's approval, and Navistar agreed to order the parts and install them on each compact loader supplied by Harsco. In 1973, Navistar sold to Larry Franks's employer a compact loader that was not fitted with the modified brake system. In 1981, Franks died from injuries allegedly sustained in a North Carolina accident involving the compact loader. In 1982, Franks's estate sued Harsco and Navistar, alleging that the compact loader had design defects and that Navistar had had the component parts for the brakes in its inventory for more than one year but had refused or failed to install them on the unit Franks was operating at the time of his injuries. As pointed out above, in 1983, Harsco took up the defense of Navistar pursuant to the indemnification provision included in the distribution agreement.
 III
At the outset, we note that pursuant to the distribution agreement executed by the parties, Illinois law governs the substantive aspects of this dispute and Alabama law applies to the procedural questions. Both parties have cited and argued Illinois case law extensively.
Navistar's argument can be stated succinctly: The trial court did not err in granting its motion for summary judgment on the undisputed facts and evidence before it, because Harsco agreed to indemnify it "against any and all claims made by any person, including without limitation, tort product liability and liability for breach of either express or implied warranties." Navistar's argument is based upon the contention that the front end loader was defective in design, material, or workmanship; that the terms of the distribution agreement are plain; that under Illinois or Alabama law, Harsco agreed to indemnify it, under the undisputed facts of this case; and that because Franks's estate sued Navistar and Harsco for injuries and death stemming from a defective product designed by Harsco, Harsco alone should bear the responsibility. Indeed, Navistar argues *Page 1011 
that the indemnification provision of the distribution agreement "anticipated the exact situation before the Court." We cannot agree with that argument, in view of the facts presented.
If the facts were simply that Harsco designed a defective product that Navistar sold and that was the cause of Franks's death, then Navistar's argument would be controlling, because the indemnification agreement would control and a summary judgment for Navistar would be proper. Cf., McBro, Inc. Traveler's Insurance Co. v. M M Glass Co., 611 So.2d 283
(Ala. 1992). However, the indemnity agreement provides that Illinois law applies; under Illinois law "[i]t is well settled . . . that indemnity contracts are to be strictly construed."Argueta v. Baltimore Ohio Chicago Terminal R.R., 224 Ill. App.3d 11, 586 N.E.2d 386, 395, 166 Ill.Dec. 428, 437 (1991). Indeed, "[s]ince Westinghouse Electric Elevator Co. v. La SalleMonroe Building Corp., 395 Ill. 429, 70 N.E.2d 604 (1946), Illinois courts have consistently held that indemnification contracts will not be construed as indemnifying against a party's own negligence unless such construction is required by clear and explicit language of the contract or such an intention is expressed in unequivocal terms." Argueta,224 Ill. App.3d at 25, 586 N.E.2d at 395, 166 Ill.Dec. at 437.
The question presented, therefore, is whether the indemnity provision before us, when strictly construed, is a clear and explicit expression in unequivocal terms of an agreement that Harsco indemnify Navistar even if it was Navistar's negligence that caused Franks's injuries and death.
Even though it agreed, in pertinent part, to "indemnify [Navistar] against any and all claims made by any person, including without limitation, tort product liability and liability for breach of either express or implied warranties," Harsco argues that this provision does not clearly provide for indemnity if Franks's death was caused by negligence on the part of Navistar in failing to install the brake system on the compact loader; and Harsco points out that Illinois law prevents indemnification for the negligent acts of Navistar unless the parties clearly and explicitly intended such a result and so stated in unequivocal terms. Alabama law is similar in this regard. We agree with Harsco's argument.
Indemnification is not required for negligent acts of the indemnitee unless the parties "knowingly, evenhandedly, and for valid consideration, intelligently enter[ed] into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language." See, Industrial Tile, Inc. v.Stewart, 388 So.2d 171, 176 (Ala. 1980); see also CraigConstruction Co. v. Hendrix, 568 So.2d 752 (Ala. 1990).
Even though the provisions of the indemnification agreement are reasonably clear, the facts surrounding the responsibilities for equipping the subject loader with the emergency/parking brake system were such that we cannot say that, as a matter of law, the parties reasonably expected indemnity to apply under the facts of this case. Because the indemnification provision does not clearly require Harsco to indemnity Navistar, the language of the indemnification agreement is not dispositive of the question of indemnification. A jury question is presented on that issue.
We recognize that, as between private parties, indemnity contracts are enforceable if the contract clearly indicates an intention to indemnify against the consequences of the indemnitee's negligence, if the indemnity provision was clearly understood by the indemnitor, and if there is no evidence of a disproportionate bargaining power. Even though we find no unequal bargaining power here, and even though the provisions regarding indemnity are reasonably clear, the liability for the defective condition of the loader presents a fact question insofar as the reasonable expectancy of the parties is concerned. If we held that the indemnity provisions are clear and unequivocal, under the facts of this case, we would have to hold that Harsco agreed to indemnify Navistar for Navistar's alleged negligence in regard to actions that a factfinder could conclude were out of Harsco's control; there are facts indicating *Page 1012 
Harsco shipped the emergency/parking brake parts to Navistar and that Navistar held them in its warehouse for over a year before selling the loader and never equipped the loader with the brake system.
Considering the facts and applying the rules relating to summary judgments, we conclude that Navistar failed to carry its burden of showing that there exists no genuine issue of material fact. The factfinder may determine that Harsco did agree to indemnify Navistar in a situation such as that presented in the Franks's action; however, the factfinder may determine otherwise.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
INGRAM, J., dissents.