**KERR–McGEE CHEMICAL CORPORATION, a Delaware corporation, Plaintiff–Appellant,**

v.

**LEFTON IRON & METAL COMPANY, a Missouri corporation, and Lefton Land & Development Company, Incorporated, a Missouri corporation, Defendants–Appellees.**

No. 92–2440.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1993.

Decided Jan. 18, 1994.

Rehearing Denied Feb. 9, 1994.

Looking at this page, it appears to be almost entirely redacted with black boxes. The only readable content is the page number "323" in the top right corner.

The image provided covers essentially the entire page content (the redacted blocks).

Jeffrey C. Fort (argued), Stuart Altschuler, Frank H. Hackmann, Kirk M. Minckler, Sonnenschein, Nath & Rosenthal, Chicago, IL, Fred C. Prillaman, Stephen F. Hedinger, Mohan, Alewelt, Prillaman & Adami, Springfield, IL for plaintiff-appellant.

Mark G. Arnold, Husch & Eppenberger, St. Louis, MO (argued), Kevin T. McClaim, Immel, Zelle, O'Gin & McLaim, Springfield, IL, for defendants-appellees.

Before POSNER, Chief Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In August 1990 plaintiff Kerr-McGee Chemical Corporation ("Kerr-McGee") filed this suit against Lefton Iron & Metal Company ("Lefton Iron") and Lefton Land & Development Company, Inc. ("Lefton Land") under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and under the diversity provision of the Judicial Code, 28 U.S.C. § 1332. Kerr-McGee is a Delaware corporation whose principal place of business is Oklahoma City, Oklahoma. Lefton Iron and Lefton Land are Missouri corporations whose principal offices are located in Illinois. The defendants, sometimes referred to jointly herein as "Lefton," are both wholly owned subsidiaries of Lefton Enterprises, which is not a defendant in this action.

At the center of this dispute is a 40-acre industrial site that Lefton Iron purchased in 1972 from Moss-American, Inc., the predecessor in interest of Kerr-McGee (Moss-American merged with the plaintiff in 1974). Lefton Iron transferred ownership of the site to Lefton Land in 1984. From 1927 to 1969, the site had been used by Moss-American and its predecessor in interest to manufacture wood products such as railroad ties and utility poles, a process that involved treating the wood used with creosote and other preservatives. Although Moss-American removed over 100,000 gallons of preservatives when it ceased operating the plant, significant amounts of preservatives remained at the site. In January 1988, the State of Illinois filed a complaint against Kerr-McGee, Lefton Iron and Lefton Land alleging various pollution claims and seeking to require the parties to implement a plan for cleaning up the site. A month later Kerr-McGee entered into a consent decree that settled the state's suit against it and required it to undertake, at its expense, any and all remedial work necessary to protect public health and the environment. The defendants did not participate in the consent decree. To date Kerr-McGee has spent approximately $1.5 million on the cleanup and the total cost is likely to exceed $5 million.

In an attempt to make Lefton Iron and Lefton Land shoulder some, if not all, of the cost of cleaning the site at issue, Kerr-McGee brought the present action. Kerr-McGee makes three claims:

Count I. It seeks a declaration that the defendants are liable under Section 107(a) of CERCLA (42 U.S.C. § 9607(a)) and that its response (cleanup) costs were necessary and consistent with the National Contingency Plan (40 C.F.R. part 300).

Count II. It seeks contribution under Section 113(f)(1) of CERCLA (42 U.S.C. § 9613(f)(1)) from defendants for the necessary costs of removing the hazardous substances from the site.

Count III. It asserts that by virtue of an indemnification clause in the 1972 contract transferring the land from Moss-American to Lefton Iron, the defendants are liable for the costs of the cleanup.

After a two-day bench trial, the district judge ruled against the plaintiff on all three counts of the complaint. Having reviewed the district court's determinations of law *de novo, Ambrosino v. Rodman & Renshaw, Inc.,* 972 F.2d 776, 786 (7th Cir.1992), and its findings of fact under a "clearly erroneous" standard, *Oddi v. Ayco Corp.,* 947 F.2d 257, 263 (7th Cir.1991), we reverse on all counts.

*CERCLA Liability (Count I)*

Kerr–McGee seeks a declaratory judgment that Lefton Iron and Lefton Land are liable under CERCLA § 107(a) (42 U.S.C. § 9607(a)) for all cleanup costs that are necessary and consistent with the National Contingency Plan (40 C.F.R. part 300). The district court rejected this claim.[1] However since Kerr–McGee can establish each of the elements on which CERCLA liability is based and the defendants cannot establish the applicability of any defense listed in the statute, Kerr–McGee was entitled to judgment in its favor. See *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989).

Liability is established under CERCLA § 107(a) if:

(1) the site in question is a "facility" as defined in § 101(9);

(2) the defendant is a responsible person under § 107(a);

(3) a release or a threatened release of a hazardous substance has occurred; and

(4) the release or the threatened release has caused the plaintiff to incur response costs.

See *Environmental Transportation Systems v. Ensco, Inc.*, 969 F.2d 503, 507 (7th Cir. 1992); *Amoco Oil Co.*, 889 F.2d at 668; *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir.1985). Three elements are undisputed. Lefton does not deny (1) that the site falls within the definition of "facility" set out in § 101(9); (2) that a release or threatened release of hazardous substances occurred; and (3) that response (cleanup) costs have been incurred. At issue is whether the defendants are "responsible persons" under § 107(a). A responsible person includes the current owner and any person who formerly owned or operated the facility in question at a time of actual or threatened release of a hazardous substance. 42 U.S.C. § 9607(a)(1)–(2). As current owner of the land Lefton Land is liable, unless it demonstrates that a statutory defense is applicable to it. *Amoco Oil Co.*, 889 F.2d at 668; *Shore Realty Corp.*, 759 F.2d at 1042. Lefton Land presented evidence attempting to show that it was an "innocent landowner" under CERCLA § 107(b) (42 U.S.C. § 9607(b)). Section 107(b) requires that Lefton Land demonstrate, among other things, that it took precautions to prevent the "threat of release" or other foreseeable consequences arising from the pollution on the site. Lefton Land failed to make such a showing: the evidence at trial showed that although Lefton Land was aware of the wood preservatives on the site,[2] it made no attempt to remove those substances or to take any other positive steps to reduce the threat posed by the creosote. Lefton Land is, therefore, subject to CERCLA liability. Lefton Iron is also liable. Lefton Iron was also aware of the wood preservatives on the site and made no attempt to remove the polluting chemicals,[3] and this is sufficient to impose CERCLA liability.

1. Although the district court noted that Lefton Iron and Lefton Land were "potentially liable" under CERCLA (see Transcript of Mar. 4, 1992 Oral Verdict at 5; District Court's Conclusions of Law at ¶ 15), the court ordered judgment in favor of Lefton Iron and Lefton Land on Count I, § 107 claim (District Court's Findings of Fact and Conclusions of Law at 8).

2. The district court found that Lefton was not aware of the pollution on the site (Findings of Fact ¶¶ 6, 24). In the contract transferring the property, however, Lefton acknowledged the presence of the substances that now must be removed, see *infra* p. 328. The district court's findings are therefore erroneous as a matter of law.

3. The district court absolved Lefton for its failure to address the environmental pollution at the site. The district court claimed that Lefton's inaction was attributable to Kerr–McGee's failure (after the inspection it undertook in 1980 to comply with CERCLA) to notify Lefton that the site contained pollutants (Conclusions of Law ¶ 27). There is no indication, however, that Kerr–McGee was under a duty to inform Lefton of its findings, particularly since Lefton was privy to the information that gave rise to Kerr–McGee's inspection: that the site had formerly been used for manufacture of wood products and that there were wood preservatives on the site (something Lefton acknowledged in the contract transferring ownership of the site). Moreover, Lefton took no action to clean up the site even after the Illinois Environmental Protection Agency and the United States Environmental Protection Agency undertook preliminary investigations of the site. The district court, therefore, was in error when it absolved Lefton of any responsibility to take affirmative measures to control the pollution on the site.

The district court's determination is, therefore, reversed and the case is remanded so that the district court may enter judgment for the plaintiff on Count I of the amended complaint. In doing so, the district court should determine whether plaintiff's response costs were consistent with the National Contingency Plan and whether any future cleanup costs are appropriate under CERCLA.

*Contribution Under CERCLA (Count II)*

Since Lefton Iron and Lefton Land are strictly liable under CERCLA § 107 (42 U.S.C. § 9607(a)), they are liable for any response costs that are consistent with the National Contingency Plan. *Amoco Oil Co.,* 889 F.2d at 668; *Shore Realty Corp.,* 759 F.2d at 1042. However, under CERCLA § 113 (42 U.S.C. § 9613(f)), a party may seek contribution from another person who is liable or potentially liable under § 107. In allocating response costs among the liable parties, a court should employ such equitable factors as it determines are appropriate. 42 U.S.C. § 9613(f)(1). Factors which may be considered include the relative fault of the parties, *Environmental Transportation Systems v. Ensco, Inc.,* 969 F.2d at 508–509 (a court has "power to weigh and consider relevant factors, including [relative] fault" of the parties); relevant "Gore factors,"[4] *id.* at 509 (noting that the "Gore factors are neither an exhaustive or exclusive list" of the factors to be considered); and any contracts between the parties bearing on the allocation of cleanup costs, *United States v. R.W. Meyer, Inc.,* 932 F.2d 568, 571–572 (6th Cir.1991). Since the district court did not believe the indemnification agreement applied to the cleanup costs at issue, the court ignored the agreement when allocating responsibility for cleanup costs. This was an error. Although contractual arrangements between parties are not necessarily determinative of statutory liability, Lefton's intent to indemnify Kerr–McGee should be considered in the allocation of cleanup costs. In determining the relative contribution of the parties, courts must look to the "totality of the circumstances." *Environmental Transportation Systems,* 969 F.2d at 509. That Lefton—with knowledge of the creosote on the site—agreed that it took the property "as is" and would assume all future liabilities resulting from that pollution is certainly a significant circumstance. The fact that Kerr–McGee's predecessor Moss–American was the source of most of the pollution at the site may also weigh in the court's analysis; this, however, is not reason to ignore other relevant considerations.

The court below should have considered the indemnity agreement in its equitable balancing under Count II. However, since we hold below that Lefton must indemnify Kerr–McGee for its cleanup costs it does not appear to this Court that a reallocation of contribution will be necessary on remand. If, however, the district court determines that reallocation is necessary because, for example, Lefton cannot fully satisfy the indemnity provision, it should when determining the appropriate allocation of costs consider the indemnity agreement made between the parties.

*Contractual Indemnification (Count III)*

Paragraph 17(b) of the 1972 contract transferring ownership of the site in question from Moss–American provides:

> [Lefton][5] expressly agrees to indemnify and to defend and hold [plaintiff's prede-

4. These factors are:

(1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;
(2) the amount of the hazardous waste involved;
(3) the degree of toxicity of the hazardous waste involved;
(4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;
(5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and
(6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.

5. Lefton Iron was the party to the agreement. However, in their discussion of the indemnity agreement the defendants make no distinction between Lefton Iron and Lefton Land's liability

cessor Moss–American], its officers, employees, and agents, free and harmless from and against any and all claims, damages, judgments, fines, penalties, assessments, losses, expenses, including interest, court costs and attorney fees, however the same may be caused, arising out of or resulting from, directly or indirectly, the following: (a) the purchase, dismantling or sale of the personal property and real property by [Lefton]; (b) the maintenance of any action, claim or order concerning pollution or nuisance; and (c) the use by [Lefton] or its employees or agents of the personal property and real property.

The district court found, among other things, that this indemnity provision was "so unclear that [the court would] not enforce it" (Kerr–McGee App. 2 at p. 10). Since this Court believes that the indemnity agreement is sufficiently clear to resolve the case before us, we reverse. In no uncertain terms,[6] Lefton Iron agreed to assume the liability for losses resulting from "the maintenance of any ... claim ... concerning pollution or nuisance...." The indemnity provision covers all pollution and nuisance claims without limitation, and the costs incurred by Kerr–McGee in order to resolve the pollution claims brought against it by the State of Illinois are clearly within the scope of the provision. Lefton is similarly responsible for any liability imposed on Kerr–McGee under CERCLA. Lefton is thus responsible for the $1.5 million Kerr–McGee has spent to date, and any future amounts it may spend, to clean up the site in question.

The district court's reasons for narrowing the scope of the broadly worded indemnity agreement are without merit. The district court's interpretation hinged in part on its unwillingness to require Lefton to shoulder the costs of a "CERCLA-type" cleanup since CERCLA had not been enacted at the time of the transfer of the property. That the indemnity provision was agreed to prior to CERCLA's enactment should not, however, have affected the district court's reading of the agreement. A party may indemnify another party for liability arising out of a law not in existence at the time of contracting. *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 33 (7th Cir.1986) (pre-CERCLA indemnity provision could be interpreted to cover costs imposed by the Act); *South Bend Lathe, Inc. v. Amsted Industries, Inc.*, 925 F.2d 1043, 1046 (7th Cir.1991) (indemnity clause may cover liability under subsequently adopted law). And the language of the indemnity provision indicates that this is exactly what Lefton agreed to do. The indemnity agreement covers any claim concerning pollution or nuisance: nothing in paragraph 17(b) itself limits the agreement to indemnification for liabilities under then existing law. Moreover, since the Illinois Environmental Protection Act was adopted two years before the parties contracted, see Ill.Rev.Stat. ch. 111½, ¶¶ 1021(a), (e), it is completely reasonable to presume that paragraph 17(b) reflects the parties' agreement regarding who would assume the costs imposed by emerging environmental regulation.

The district court also erred when it refused to enforce the indemnity clause because the clause was "not intended to cover Kerr–McGee's own fault" (Kerr–McGee App. 2 at p. 10). Illinois courts have consistently held that indemnification contracts will not be construed as indemnifying a party for its own negligence unless such construction is required by "clear and explicit language." *Argueta v. Baltimore & Ohio Railroad Co.*, 224 Ill.App.3d 11, 166 Ill.Dec. 428, 437, 586 N.E.2d 386, 395 (1991). The district court, however, made no finding that Kerr–McGee or its predecessor acted negligently or wrongfully at the site here at issue. Nor does the record support such a conclusion; rather, it indicates only that Kerr–McGee's predecessors were the source of much of the pollution. But even if there had

under the contract, referring to themselves jointly as "Lefton" throughout.

6. Lefton's suggestion to this Court that the clause is rendered ambiguous by the "and" linking subsection (b) and (c) is without merit. Lefton's proposed reading of the clause is strained and clouds the meaning of an otherwise clear provision. Moreover, because it has never suggested this interpretation previously, the argument is waived. *Oxman v. WLS–TV*, 12 F.3d 652, 658 (7th Cir.1993).

been a finding of fault, Lefton would be required to indemnify Kerr–McGee. In "unequivocal terms," *id.*, the indemnity agreement makes clear that the question of fault is irrelevant: Lefton explicitly agreed to assume the costs of all claims relating to pollution or nuisance "however the same may be caused." Furthermore, Lefton knew of the pollution at the site when it purchased the property: its inspection of the site revealed signs of pollution; soil samples indicated the presence of creosote; and most importantly, in the contract of sale Lefton expressly acknowledged the presence of wood preservatives (of which creosote is one) on the property:

> [Lefton] represents that it has carefully inspected the property, improvements and equipment located therein and expressly agrees ... [that] it accepts them in "as is" and "where is" condition.... [Lefton] is aware of the existence of two waste water ponds containing oil and other wood preservatives in solution.

Lefton might not have foreseen that these chemicals would one day need to be removed at a substantial price. But when it agreed to take the property "as is" and to "indemnify ... [and] hold ... [plaintiff's predecessor Moss–American] harmless from and against any and all claims ... however the same may be caused, arising out of or resulting from ... the maintenance of any action, claim or order concerning pollution or nuisance," it agreed to assume future costs resulting from the presence of the chemicals on the property. That Kerr–McGee's predecessor was the source of the pollution is immaterial; when Lefton bought the property, it bought the chemicals then on the site and the future liabilities that went with them. One assumes that if Lefton did undertake the potential liabilities associated with the presence of chemicals on the site—and the language of paragraph 17(b) indicates that it did—it received a discount in price reflecting the probability that a costly cleanup might at some point be required. But if it did not, the indemnity agreement cannot now be invalidated because Lefton got the worse of the bargain.

On remand, the district court shall provide plaintiff with indemnification for all proven present and future cleanup costs and other expenses as provided in paragraph 17(b) of the 1972 contract between the parties.

*Conclusion*

The judgment of the district court on all counts of Kerr–McGee's amended complaint is reversed and the case is remanded for further proceedings consistent with this opinion.