MURDOCK, Justice
(concurring in part and dissenting in part).
I concur in the Court’s affirmance of the trial court’s summary judgment in favor of Marathon Electrical Contractors, Inc., concerning the claims against it by Doster Construction Company, Inc., alleging that Marathon breached its contract with Dost-er by faffing to procure insurance for a cross-claim asserted against Doster by Steel City, Inc. I disagree, however, with the Court’s conclusion that Marathon breached its contract with Doster when it failed to indemnify Doster for Steel City’s claim against Doster.
Contracts “ ‘are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.’ ” Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala.2001) (citations and emphasis omitted). Of even more specific application here is the principle that an indemnity contract should not be “extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them.” Pyle v. Pizitz, 215 Ala. 398, 401,110 So. 822, 824 (1926).
It is true that Steel City would not have needed to pursue a cross-claim against Doster if not for the fact of a work-site injury to which the contributory negligence of Les Unland, which in turn is imputed to Marathon, indirectly contributed. The specific loss by Doster to Steel City at issue here, however, is not one as to which “it may reasonably be inferred that the parties intended to covenant against.”
Under the terms of the indemnity clause, “indemnified loss[es]” are
“all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses ... that arise in any way, directly or indirectly, out of a failure by [Marathon] (including the [Marathon] Design Professionals) to: (a) carry out the Work in a safe manner; (b) strictly comply with any applicable laws, regulations, building codes, rules, or industry standards; (c) exercise reasonable care in the performance of the Work or to execute the Work in a non-negligent manner; or (d) strictly comply with the requirements of this Subcontract.”
The intent of the parties reflected in this language is for Marathon to indemnify *1286 against any loss that is imposed upon or suffered by an “indemnitee”[3] because of or “out of a failure by [Marathon]” in any one of the above-listed respects. In other words, the trigger for the indemnity clause is wrongful conduct by Marathon that results in a loss being imposed upon an indemnitee.
Unland’s complaint alleged that both Doster and Steel City were at fault for his accident. Marathon defended and indemnified Doster for Unland’s claim against Doster because Doster was an “indemni-tee” and because Marathon believed there was a chance that its own negligence had contributed to the accident. The fact that, according to Unland’s allegation, negligence on Doster’s part also potentially contributed to the accident would not have excused Marathon from defending and indemnifying Doster because the indemnity clause provided that “Indemnitees shall not be diminished or excused merely because the negligence or other breach of a legal duty on the part of any Indemnitee also contributed to the Indemnified Loss.”
Once Unland settled his claims against Doster, however, the only claim remaining against Doster was the claim by Steel City. Significantly, that claim was a result of liability by Steel City to Unland resulting from alleged wrongdoing by Steel City itself. Doster had responsibility to indemnify Steel City for this loss only because, unlike the indemnity clause between Dost-er and Marathon, Steel City’s indemnity agreement with Doster did not require action by a particular party (i.e., negligence by the indemnitor) to trigger the agreement; it simply required Doster to “defend and indemnify [Steel City] and hold [Steel City] harmless from any and all losses, claims, costs ... and liability for personal injury or any other casualty losses ... arising from the performance of this Agreement.” (Emphasis added.) Thus, Doster undertook to defend and indemnify Steel City even where Steel City might be solely responsible for causing an injury to another; all that was required was for a personal injury or casualty to “arise[ ] from” the performance of the agreement between Steel City and Dost-er.[4]
The Court’s decision in this case extends coverage of the indemnity clause in the contract between Marathon and Doster beyond the parameters of the parties whose behavior the contract was intended to govern. The contract between Doster and Marathon necessarily concerns the behavior of those two parties and the responsibilities each owes the other in and related to construction activities on the Oxford Automotive project work site.[5] By the terms of the indemnity clause, Marathon agreed to indemnify Doster for Marathon’s *1287 negligence at the Oxford Automotive work site and for Doster’s negligence if that negligence occurred in conjunction with Marathon’s negligence and the negligence resulted in a loss to Doster. Doster’s other subcontractors, including Steel City, are not referenced in any way in the indemnity clause.
After Doster and Marathon executed them agreement,[6] Doster assumed a contractual indemnity obligation to Steel City.[7] Steel City’s cross-claim against Doster exists only because of Doster’s undertaking in that separate agreement. Marathon was not a party to that separate agreement, and the Doster-Marathon indemnity clause contains no indication that it contemplates that separate agreement.
Although the loss suffered by Steel City arguably was caused in some part by the actions of Unland and, therefore, Marathon, Doster is suffering a “loss” associated with Steel City’s loss only because of a liberal, unconditional contractual indemnity obligation Doster voluntarily assumed to Steel City. This was a contractual undertaking by Doster to which Marathon was not a party and that, for all appearing, Marathon was not aware would come into existence when it entered into its agreement with Doster. In other words, Marathon’s bargain to shoulder more than its share of responsibility as between it and Doster for their respective acts and omissions is one thing. I cannot conclude, however, that Marathon signed any agreement by which it agreed to shoulder responsibility for losses suffered by a third party, at least not without the benefit of defenses, such as contributory negligence, that would normally be available to defend against claims originating in that third party.
By making Marathon liable for the loss of Steel City at issue here only because, without any input or awareness by Marathon, Doster voluntarily took on a 100% indemnification responsibility to Steel City even when the loss is partially or fully Steel City’s fault, the Court retroactively incorporates into Marathon’s agreement with Doster an obligation not contemplated by that agreement and for which Marathon did not bargain. Marathon is not responsible for the commitment Doster made in its indemnity agreement with Steel City; accordingly, Marathon did not breach the indemnity clause in refusing to defend and indemnify Doster for Steel City’s cross-claim against Doster.
In my view, the dispositive principle in this case is the long-established and sound principle I noted at the outset: an indemnity contract should not be “extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them.” Pyle v. Pizitz, 215 Ala. at 401, 110 So. at 824. I conclude that the Court’s reading and in *1288 terpretation of the indemnity clause in the agreement between Doster and Marathon is not in accordance with this principle. I therefore respectfully must dissent from the Court’s conclusion on this issue.

. The "indemnitees” include the "Contractor [Doster], Owner, and Architect, and their respective directors, officers, agents, employees, successors, insurers, sureties, affiliates, and assigns.”

. As noted in the main opinion, indemnification for an indemnitee’s own negligence ordinarily requires “clear and unequivocal language.” Harsco Corp. v. Navistar Int'l Transp. Corp., 630 So.2d 1008, 1011 (Ala. 1993) (citing Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala. 1980)). 32 So.3d at 1283 n. 2. Doster never challenged its indemnification agreement with Steel City on this basis, however, so no issue in this regard is before us.

.This understanding is consistent with another portion of the indemnity clause, which explains that
"if in any proceeding initiated by a third party, there is an apportionment of the relative contributions to the Indemnified Loss by the Indemnitees on the one hand, and [Marathon] on the other, then [Marathon] shall only be required to defend and indemnify the Indemnitees to the extent of [Marathon's] proportionate contribution.”

. The parties dispute when the indemnity agreement between Steel City and Doster was executed. Marathon alleges that a Doster employee signed the invoice containing the indemnity agreement the day after the accident in question, without knowing it contained an indemnification agreement. Doster alleges that the invoice was signed before the accident. In either event, there is no dispute that the indemnity agreement between Steel City and Doster was executed over three months after the agreement between Marathon and Doster containing the indemnity clause was executed.

. The one-page document is separate from Doster’s contract with Steel City, and Doster’s contract with Steel City is not in the record. Aside from the paragraph provided above concerning indemnification, the one-page document appears to be a work-order form acknowledging that on July 18 and 19, 2003, Steel City employees worked 11 hours of overtime "test loading” an overhead crane.