THOMAS HAISMA, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (5th Division) No. 1—88—2889

Opinion filed July 26, 1991.

Roland W. Burris, Attorney General, of Springfield (Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellant.

Frank J. Petru, of Leoris & Cohen, P.C., of Highland Park, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Defendant, the Illinois Secretary of State, appeals from an order of the circuit court of Cook County directing him to comply with a previously entered order reversing the denial of full driving privileges to plaintiff, Thomas Haisma. Defendant contends that the trial court had no authority to give effect to the earlier order because the parties had entered into a valid settlement agreement and defendant had performed its obligation under the agreement.

On June 20, 1982, plaintiff was arrested for driving under the influence of alcohol (DUI) while on the way home from a bachelor's party given for him. Plaintiff was parked, sleeping, when a police officer stopped and asked him if he could drive and, if so, told him to drive home. Plaintiff drove one block, and then was arrested and charged with DUI. A breathalyzer test measured his body alcohol

level at .32. On October 21, 1982, plaintiff was convicted of the DUI charge.

Previously, on April 19, 1975, plaintiff was arrested for driving under the influence of alcohol while on the way home from a high school graduation party. He refused to take a breathalyzer test. This charge was later plea bargained down to reckless driving. (Previous convictions included illegal transportation of alcohol in 1974; speeding in 1975; and disregarding a traffic light in 1975.) Plaintiff's driver's license was temporarily suspended for refusal to take a breathalyzer and for committing three or more moving violations in a 12-month period. In 1980, plaintiff was convicted of disregarding a traffic light.

On September 17, 1982, an alcohol and drug "Initial Evaluation" form was completed by Robert Cimaglio of the Lake County Council on Alcoholism. He wrote:

"The client stated symptoms of a heavy history of alcohol abuse, a high tolerance towards alcohol, loss of control at times while drinking, blackouts, hangovers, also behavioral changes while drinking.

* * *

The client seems to be in the middle stage of alcoholism. His awareness of where he is at is poor. The client stated that he has no intentions on stopping his drinking completely but has been trying to moderate himself. Strong denial."

Apparently as part of the same evaluation, the DUI coordinator at Lake County Council on Alcoholism completed reports on October 26, 1982, and January 4, 1983, referring back to the September 17, 1982, evaluation and recommending plaintiff for attendance at Alcoholics Anonymous.

On November 27, 1982, defendant revoked plaintiff's driver's license pursuant to section 6—205(a)(2) of the Illinois Vehicle Code. Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(a)(2).

On January 27, 1983, plaintiff sought a restricted driver's permit (RDP) or full driving privileges from the Secretary of State. (Secretary of State File No. C—1033—83.) He also requested a formal hearing, pursuant to section 2—118(a) of the Illinois Vehicle Code. Ill. Rev. Stat. 1983, ch. 95½, par. 2—118(a).

On March 29, 1983, a hearing was held by hearing officer Joan Carger, who denied plaintiff's request for an RDP or full driving privileges. She pointed to the first alcohol assessment report of September 17, 1982. These findings and recommendation were adopted by defendant on April 29, 1983.

In November 1984, an alcohol assessment report was completed by Jack Clark of the Parkside Lodge, Mundelein. He found no alcohol addiction. Plaintiff was classified as Level I—nonproblematic.

In 1985, plaintiff sought an RDP or full driving privileges. Secretary of State File No. C—1602—85.

On April 3, 1985, a hearing was held by hearing officer Linda Smith. She denied plaintiff's request for an RDP or full driving privileges. She pointed to the first alcohol assessment report and noted the November 29, 1984, assessment did not reflect the "multiple alcohol related arrests." She concluded: "Given the conflicting evidence, the Hearing Officer was unable to make a determination of the nature and extent" of plaintiff's use of alcohol. These findings and recommendation were adopted by defendant on May 6, 1985.

In October 1985, an alcohol assessment report was completed by Evan (Jack) Clark of the Parkside Lodge, Mundelein. He found no alcohol addiction. The April 1975 reckless driving conviction was specifically noted. Plaintiff was again classified as Level I—nonproblematic.

On January 22, 1986, plaintiff again sought an RDP or full driving privileges. Secretary of State File No. C—885—86.

On February 25, 1986, a hearing was held by hearing officer Louis Libert. The 29-year-old plaintiff testified regarding the June 1982 DUI arrest. He had parked at a construction site and fallen asleep after leaving a party. At the direction of a police officer, he started to drive home and was arrested one block later. Plaintiff testified that during the first (September 1982) assessment "I had a little disagreement with the gentleman performing the assessment. He asked me how much I drank, and I told him; and he came right out and called me a liar, and I was rather displeased with that." Plaintiff was asked why he had presented the first assessment at the earlier hearing if he believed it did not truly reflect his drinking habits. Plaintiff replied, "That was the only one I had. I didn't have $45 to get another assessment." Plaintiff also submitted testimony and letters from employers, friends and relatives stating that plaintiff had never had a drinking problem.

The hearing officer acknowledged that plaintiff had been notified by his employer at that time that without driving privileges he would be terminated from his employment, because he was required to drive as far as 75 miles from his place of employment in the course of employment-related duties. Plaintiff submitted a letter from Magna-Tech, Inc., offering to rehire him as a heavy equipment operator at construction sites located throughout the State, if he received a driver's license. "I would have no reservations in rehiring [plaintiff] if he had

a driver's license." In addition, Dependon, Inc., wrote that "[s]hould [plaintiff] regain his privilege of driving in the State of Illinois, I feel we would benefit from his expertise as a driver [of heavy duty trucks] for our firm." Sinesh Auto Body wrote that it "would "employ [plaintiff] again if he had a license to operate motor vehicles." He needed the license at Sinesh in order to road test cars. At that time, plaintiff worked at Sheridan Motors as a salesman, and urged that he needed a license to test drive cars, show cars to customers, and deliver cars to customers. He lived in a rural area located 13 miles from Sheridan Motors, and no public transportation was available.

The hearing officer denied plaintiff's request for an RDP or full driving privileges. He primarily pointed to the first alcohol assessment. On May 27, 1986, defendant adopted these findings and recommendation. (Secretary of State File No. C—885—86) This is the decision involved in the present appeal.

On July 1, 1986, plaintiff filed a complaint in chancery, seeking administrative review of the Secretary of State's decision in case No. C—885—86, under the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118(e)) and the Illinois Administrative Review Act (Ill. Rev. Stat. 1985, ch. 110, par. 3—101).

On April 8, 1987, the trial court reversed the May 27, 1986, decision by the Secretary of State, finding it was "arbitrary and capricious and against the manifest weight of the evidence." The court ordered full reinstatement of plaintiff's driving privileges. (The transcript from the April 8, 1987 hearing is not contained in the record.)

On May 8, 1987, defendant filed a notice of appeal from the April 8, 1987 order (circuit court No. 86—CH—6335; Illinois Appellate Court No. 1—87—1479).

On July 21, 1987, this court stayed the effect of the trial court's April 8, 1987, order. Thus, plaintiff continued without driving privileges until December 11, 1987, when the parties entered into a settlement agreement under which plaintiff would immediately receive a restricted driving permit.

On the same day, defendant asked this court to grant its motion to voluntarily dismiss the appeal in No. 1—87—1479. (Secretary of State File No. C—885—86.) The appeal was dismissed by this court on December 23, 1987. The April 8, 1987, trial court order apparently was not vacated at any time.

In December 1987, defendant issued a six-month RDP to plaintiff.

On March 31, 1988, an alcohol assessment report was apparently completed, again classifying plaintiff as Level I—nonproblematic. (The

report is not contained in the record, but is mentioned in the decision of hearing officer Kurasch, which is found in the appendix of defendant's brief.)

In May 1988, plaintiff sought full driving privileges or a renewal of his RDP, which was set to expire on June 28, 1988.

On May 19, 1988, a hearing was held by hearing officer Jonathan Kurasch, who denied plaintiff's request. (Secretary of State File No. C—3420—88.) In his (undated) findings and recommendation, the hearing officer mainly relied on plaintiff's failure to provide full disclosure to the (November 1984 and October 1985) assessors, specifically regarding (1) the 1975 DUI charge and reckless driving conviction (which was in fact included on the October 1985 assessment); and (2) the blood-alcohol content level at the time of the 1982 DUI arrest. He also pointed to a discrepancy between the findings of the first *two* assessments (which actually was a single assessment), and all the subsequent assessors (who found no alcohol problem at all). (The hearing officer's findings and recommendation are not in the records, but are contained in the appendix of defendant's brief.)

On June 28, 1988, plaintiff's six-month RDP expired.

On August 16, 1988, plaintiff filed in the circuit court a petition for rule to show cause why defendant should not be held in contempt for failure to obey the April 8, 1987, court order. (Circuit Court No. 86—CH—6335, which related to Secretary of State File No. C—885—86.) Plaintiff alleged that defendant had made verbal promises to renew the RDP without a formal hearing.

On August 23, 1988, the assistant Attorney General who handled the settlement negotiations filed an affidavit stating that she made no verbal representations to plaintiff.

On August 26, 1988, defendant adopted the earlier findings and recommendations made by hearing officer Kurasch in No. C—3420—88. (Defendant's decision is not in the record, but is contained in the appendix of defendant's brief.)

On August 30, 1988, the trial court entered an order instructing defendant to decide by September 1, 1988, whether it would be issuing plaintiff a 12-month RDP, subject to renewal thereafter. (Defendant has failed to provide this court with any transcript of the August 30, 1988 hearing.)

On September 1, 1988, defendant appeared before the trial court and announced that it would not issue an RDP, and stated that it assumed the court would reinstate the April 8, 1987 order. The trial court then vacated the settlement agreement and reinstated the April

8, 1987, order. Concomitantly, defendant's oral motion to stay the order *instanter* was denied.

On September 22, 1988, defendant filed a notice of appeal from the September 1, 1988, order.

On September 30, 1988, plaintiff filed a rule to show cause why defendant should not be held in contempt for failure to obey the April 8, 1987, order and issue him a driver's license. On that day, the trial court held that defendant should appear on October 14, 1988, and show cause.

On October 6, 1988, defendant filed a motion to stay in this court, where its appeal was pending, and we denied the motion on November 7, 1988.

OPINION

Defendant first contends that the trial court had no authority to vacate the settlement agreement.

■ Upon breach of a settlement agreement, the parties have several options, including rescission of the settlement contract. Where a breach goes to an essential element of the compromise agreement and in effect amounts to a refusal to perform or an abandonment, the other party may elect to regard the agreement as rescinded and proceed on the original cause of action, or may sue on the agreement for the breach. See *Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 489 N.E.2d 340.

Here, plaintiff treated the contract as rescinded and relied on the original judgment of April 8, 1987. In fact, it was defendant who announced to the trial court on September 1, 1988: "[Defendant is] not going to issue an RDP. So, I assume, what the Court's going to do is enforce the [April 8, 1987,] order of Judge Wosik." The court agreed that it would "vacate the settlement agreement and leave the order that Judge Wosik entered."

■ The trial court here had inherent power over the enforcement of its judgments. In *Rubly v. Edgar* (1991), 209 Ill. App. 3d 396, 568 N.E.2d 113, the trial court properly enforced its order, entered one year earlier, reversing the defendant Secretary of State's decision and ordering defendant to issue plaintiff an RDP. In that case, as here, the trial court had refused to stay the order pending appeal; defendant then filed a notice of appeal which he voluntarily dismissed several months later; defendant issued plaintiff an RDP for three months; defendant required plaintiff to undergo another formal hearing; and defendant finally refused to renew the RDP. Plaintiff filed a petition for relief from violation of the court's earlier order, and the

trial court ordered defendant to comply with the earlier order and issue an RDP.

On appeal, this court held that the trial court had the authority to enforce the order, although it had been entered one year earlier, because defendant had never complied with the trial court order, instead issuing only a three-month RDP and requiring him to undergo another formal hearing, although no further DUI arrests had occurred. We pointed out that after the second hearing, defendant had refused to grant plaintiff a renewal of the RDP for virtually the same reasons as those given in the first hearing, which decision had been reversed. We concluded that the trial court retained jurisdiction to enforce its order regardless of the lapse of time. Although the trial court order had not specified a time period for compliance, we held that the trial court's later enforcement of the order was "proper because the defendant had continued to exercise his power in an arbitrary and capricious fashion by continuing to create unnecessary and burdensome obstacles for the plaintiff." *Rubly v. Edgar,* 209 Ill. App. 3d at 400.

Similarly, in the present case we find that the trial court had the authority to enforce its earlier order of April 8, 1987.

Defendant contends further that it did not breach the settlement agreement, since it gave plaintiff a six-month RDP and never promised him a renewal of the RDP.

 Illinois public policy generally favors the peaceful and voluntary resolution of disputes. (*Jachera v. Blake-Lamb Funeral Homes, Inc.* (1989), 189 Ill. App. 3d 281, 545 N.E.2d 314.) There is a presumption of validity when a settlement is entered into, absent mistake or fraud, and the settlement is conclusive on the parties thereto as to all matters included therein. (*Nationwide Art Center, Ltd. v. Daley* (1986), 149 Ill. App. 3d 508, 501 N.E.2d 171; *McCracken Contracting Co. v. R.L. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 462 N.E.2d 682.) As defendant concedes, there has been no claim of fraud or mistake here. In order to determine whether failure of performance constitutes a material breach permitting rescission of the contract, a court must ask whether "the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." (*Trapkus v. Edstrom's, Inc.,* 140 Ill. App. 3d at 725, 489 N.E.2d at 345.) The issue of what type of driving privileges plaintiff was to have was the key to the entire settlement agreement, and thus the contract would not have been made without this term. Having found the allegedly breached contract term to be material, we go on to construe the language of that term as contained in the agreement.

██ ■ A settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law. (*Vole, Inc. v. Georgacopoulos* (1989), 181 Ill. App. 3d 1012, 538 N.E.2d 205; *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 438 N.E.2d 1273.) Where there is no ambiguity in the language of a settlement agreement, the determination of the intent of the parties is governed by the contract language alone. *Payne v. Coates-Miller, Inc.* (1982), 105 Ill. App. 3d 273, 434 N.E.2d 306.

The contract language at issue here states that "in consideration of the dismissal of the appeal" in No. 1—87—1479 by defendant, plaintiff agreed that "all rights, claims and demands and causes of actions" were "hereby fully settled, compromised, and discharged" in "plaintiff's action in administrative review in the Circuit Court of Cook County, Illinois case No. 86 CH 6335 [No. C—885—86]." The contract continues:

> "2. It is also agreed and understood upon the above consideration, that defendant-appellant Illinois Secretary of State JIM EDGAR, agrees to grant plaintiff Tom Haisma upon proper documentations Pursuant to 92 Ill. Admin. Code, 1986, §1001.420(a) a restricted driving permit for his employment.
>
> 3. It is further understood and agreed that plaintiff Tom Haisma agrees to operate a motor vehicle pursuant to the restrictions of his restricted driving permit until a drivers [*sic*] license is issued to him."

██ ■ Defendant repeatedly argues that it "complied with the terms of the agreement by granting plaintiff a six-month RDP." We disagree. The plain unambiguous language of this contract states that plaintiff will be allowed to drive under an RDP "until a drivers [*sic*] license is issued to him." The absence of a time limit within which a settlement is to continue does not necessarily render it void or unenforceable. *Strozewski v. Sherman Equipment Co.* (1979), 76 Ill. App. 3d 266, 395 N.E.2d 38.

Nor would it be reasonable for plaintiff, who was successful in his administrative review appeal where the trial court granted him *full* driving privileges, to then give that up—after five years of having no driving privileges—in return for a only a *six-month* RDP. Plaintiff clearly gave up his right to full driving privileges in return for an RDP *until* he was issued a driver's license. Under the agreement, then, defendant was required to renew the RDP if it expired before full reinstatement of driving privileges, subject only to the administrative regulation cited within the contract, which requires proper em-

ployment documentation. We note further that defendant's administrative guidelines provides for such renewals. 92 Ill. Adm. Code, §1001.470 (1985).

Defendant invites us to add a material term to the contract so that it would read: "Tom Haisma agrees to operate a motor vehicle pursuant to the restrictions of his *six-month* restricted driving permit ***." To add such a term would render meaningless the final phrase— "until a drivers [*sic*] license is issued to him."

■■ In addition, plaintiff has made several uncontradicted representations that defendant drafted the agreement. Thus, any ambiguity we were to find would be construed against defendant. See *Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 527 N.E.2d 897.

■■ Defendant argues further that it could not have intended to issue the RDP for more than 12 months, because the Illinois Vehicle Code states that "all such permits shall expire within one year from the date of issuance." (Ill. Rev. Stat. 1989, ch. 95½, par. 6—206(c)(3).) The statute, however, has no restrictions precluding renewal of the RDP from year to year. Thus, defendant's *ultra vires* argument is not controlling.

Moreover, if we were to find the agreement barred by the doctrine of *ultra vires,* the agreement would be a nullity (*Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 433 N.E.2d 726), and the parties would be returned to their presettlement position established by the trial court's April 8, 1987, order which reinstated full driving privileges. That is exactly the result the trial court reached, although it took a different path.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LORENZ, P.J., and COCCIA, J., concur.