BARBARA L. OPPER, Plaintiff-Appellant, v. FRED A. BROTZ, Defendant-Appellee.

Third District    No. 3—95—0248

Opinion filed February 8, 1996.

Michael T. Mahoney, of Chillicothe, for appellant.

Prusak & Winne, Ltd., of Peoria (Thomas P. Higgins, of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

The plaintiff, Barbara L. Opper, and the defendant, Fred A. Brotz, signed a stipulation in which they agreed to determine liability in a personal injury case from the results of the parties' polygraph examinations. Based on this agreement, the trial court dismissed Opper's complaint. Opper appeals. We affirm.

Opper filed a personal injury action against Brotz, an auctioneer, for injuries she allegedly suffered while Brotz was transporting a Hammond organ from her residence to the auction site. Opper proposed that the parties stipulate to a polygraph examination to resolve the issue of liability. Brotz agreed, and the parties chose Edward Bowers as the lie detector examiner. The test results indicated that Brotz had responded truthfully, but Opper had not.

Brotz filed a motion to enforce the stipulation. Opper objected, claiming that the polygraph examination did not conform to the agreement and, further, was unenforceable because it was contrary to public policy. Opper requested an evidentiary hearing on the validity of the test results.

The trial court dismissed Opper's complaint with prejudice on January 24, 1995. Opper filed a motion to reconsider and vacate the order and again requested an evidentiary hearing. The trial court denied Opper's motion, and she appeals.

## I. THE STIPULATION

### A

■ Opper alleges that the agreement is too indefinite to be enforceable. Even if a stipulation fails to specify some procedural details, it is enforceable if its material terms are clear, certain, and definite. See *West v. H.P.H., Inc.*, 231 Ill. App. 3d 1, 6, 596 N.E.2d 1, 4 (1992).

Illinois favors voluntary settlements, and we should reject an otherwise valid stipulation only if it is fraudulent, unreasonable, or in violation of public policy. See *People v. Sadaka*, 174 Ill. App. 3d 260, 262, 528 N.E.2d 283, 286 (1988). The agreement gave Opper and Brotz reciprocal risks and responsibilities, and both parties were represented by counsel. Although using polygraph tests to determine civil liability is uncommon and presents some unique considerations, the parties' choice in this case was not inherently unreasonable. The terms of their agreement are clear and evenhanded. Opper's belated reevaluation of the risks and benefits of her decision does not justify

invalidating an agreement she freely accepted. The stipulation includes the fundamentals of the parties' understanding; the language used is plain and susceptible to only one reasonable interpretation. The agreement is not too vague to be enforceable.

## B

■ Opper argues that even if the trial court properly enforced the settlement, the trial court should have held an evidentiary hearing to determine the suitability of the subjects for polygraph testing. She cites a statement allegedly made by Bowers, indicating that her emotional reaction to one question could have produced "apparent[ly] deceptive responses to other questions," and a report from a second examiner she hired, stating that Opper was not a reliable subject for polygraph examination.

In the Florida case of *State v. Davis*, 188 So. 2d 24, 25 (Fla. App. 1966), *appeal denied*, 194 So. 2d 621 (Fla. 1966), a prosecutor entered into an agreement with a defendant charged with first-degree murder. Under the terms of the agreement, the opinion of a mutually acceptable polygraph examiner would determine the defendant's culpability. The test results showed that the defendant was telling the truth; however, the examiner changed his opinion after consulting with another examiner. The prosecutor refused to dismiss the case, arguing that the test results were inconclusive.

The Florida Appellate Court upheld the stipulation, noting that the parties had agreed to a mutually acceptable examiner. This examiner's original opinion was conclusive, and the opinion of the second examiner was irrelevant because he had not been approved by both parties. The court affirmed the order quashing the indictment against the defendant. *Davis*, 188 So. 2d at 28; see also *Butler v. State*, 228 So. 2d 421, 425 (Fla. App. 1969) (relying on *Davis*).

In this case, as in *Davis*, the parties agreed to resolve the issue of liability based on the results of a single polygraph test conducted by a mutually acceptable examiner. Bowers never wavered from his initial opinion that Opper's responses indicated deception; he never suggested that she was an unreliable test subject. The fact that a second examiner, hired by Opper, claimed that she could not be reliably tested does not alter the parties' duties under the terms of the stipulation. See *Davis*, 188 So. 2d at 28. No evidentiary hearing was necessary in this case.

## II. PUBLIC POLICY

### A

■ Opper also argues that the stipulation violates Illinois public

policy. She contends that it was unconscionable for the trial court to enforce a settlement having no more validity than a "coin flip[ ]" or "a spiritualistic seance," citing the dissent in *People v. Starks*, 106 Ill. 2d 441, 454, 478 N.E.2d 350, 356 (1985) (Ward, J., dissenting, joined by Moran and Miller, JJ.).

Illinois courts favor voluntary settlements, and litigants are bound by them, regardless of how unwise they may seem in retrospect, unless they are grossly unfair or unconscionable. See *Haisma v. Edgar*, 218 Ill. App. 3d 78, 86, 578 N.E.2d 163, 168 (1991); *McComb v. Seestadt*, 93 Ill. App. 3d 705, 708, 417 N.E.2d 705, 708 (1981). Opper suggested the polygraph test, and both parties had the opportunity, and the obligation, to investigate the procedure prior to signing the stipulation. See *People v. Reagan*, 395 Mich. 306, 315, 235 N.W.2d 581, 587 (1975).

In *Starks*, 106 Ill. 2d at 452-53, 478 N.E.2d at 356, our supreme court held that dismissal of armed robbery charges would be proper if, on remand, the trial court found that the defendant had fulfilled certain obligations under a polygraph stipulation. The polygraph agreement would be upheld because public policy strongly favors plea agreements. See *Starks*, 106 Ill. 2d at 452, 478 N.E.2d at 355-56.

Opper contends that since Illinois courts refuse to admit polygraph results at trial (*People v. Gard*, 158 Ill. 2d 191, 201, 632 N.E.2d 1026, 1031 (1994)), the lie detector test here should be discarded. However, the issue in this case is not the admissibility of the test results at trial, but the enforceability of the parties' stipulation. Although we question the wisdom of determining liability from the results of polygraph tests, we can find no justification for refusing to extend *Starks* to civil actions. It defies common sense and fundamental principles of fairness that a defendant accused of a serious felony may be freed because of a polygraph stipulation, but the same analysis should not apply in a civil case involving only monetary damages. See *Starks*, 106 Ill. 2d at 447, 478 N.E.2d at 353 (armed robbery); *Reagan*, 395 Mich. at 306, 235 N.W.2d at 583 (child torture and assault with intent to do great bodily harm); *Butler*, 228 So. 2d at 422, 424-25 (rape); *Davis*, 188 So. 2d at 25 (first-degree murder).

## B

Since Illinois public policy favors the voluntary resolution of disputes, a party must overcome two obstacles in order to vitiate a voluntary settlement agreement. First, an agreement may be set aside only by satisfying a high standard of proof, *i.e.*, clear and convincing evidence. See *Argueta v. Baltimore & Ohio Chicago Terminal R.R. Co.*, 224 Ill. App. 3d 11, 22, 586 N.E.2d 386, 393 (1991),

*appeal denied*, 144 Ill. 2d 631, 591 N.E.2d 20 (1992). This high standard of proof discourages unwise settlements entered into without properly weighing their risks and benefits.

Second, the presumption of validity of a voluntary agreement is conclusive (*Haisma*, 218 Ill. App. 3d at 86, 578 N.E.2d at 168) unless a party can prove (1) fraud; (2) unconscionable settlement terms or test conditions; (3) mutual mistake of material fact; (4) the subsequent occurrence of unforeseeable events; (5) legal disability, such as the party's minority or mental incompetence; or (6) a serious inequity in the bargaining process, such as the existence of grossly disparate bargaining positions, which includes such factors as the parties' relative education and sophistication, representation by legal counsel, and the presence of duress or oppression. Since the validity of an agreement presents a question of fact, these factors are not intended to be comprehensive. See *Argueta*, 224 Ill. App. 3d at 23, 586 N.E.2d at 393 (good or bad faith is a factual question to be decided in each case). Courts must evaluate each case individually.

In this case, Opper has not alleged any sufficient grounds to discharge her obligation under an agreement that she suggested. See *Starks*, 106 Ill. 2d at 452, 478 N.E.2d at 356; *Reagan*, 395 Mich. at 318, 235 N.W.2d at 587. Although Opper may have unwisely taken a calculated, or naïve, risk, the weight of public policy in this case favors the enforcement of the stipulation and dismissal of her personal injury complaint against Brotz pursuant to the agreement of the parties. See *Starks*, 106 Ill. 2d at 449, 478 N.E.2d at 354, citing *Reagan*, 395 Mich. at 318, 235 N.W.2d at 587.

## III. THE POLYGRAPH EXAMINATION

■ Finally, Opper argues that the polygraph examination exceeded the scope of the stipulation. Settlements are encouraged by Illinois courts and enforced whenever possible. *McAllister v. Hayes*, 165 Ill. App. 3d 426, 427, 519 N.E.2d 71, 72 (1988), *appeal denied*, 121 Ill. 2d 572, 526 N.E.2d 832 (1988). A stipulation is an agreement, and its words should be given their natural and ordinary meanings. *Brandel Realty Co. v. Olson*, 159 Ill. App. 3d 230, 234, 512 N.E.2d 85, 87 (1987).

In this case, the stipulation of the parties reflects their agreement on the selection of a polygraph examiner, the scope of the examinations, and the effect of various test results. These elements comprise the material terms of the parties' agreement; the language used is plain and susceptible to only one meaning. See *Argianas v. Chestler*, 259 Ill. App. 3d 926, 940, 631 N.E.2d 1359, 1368 (1994).

The stipulation states that the parties would be tested on Opper's

allegations of liability by a mutually acceptable examiner. The stipulation does not require the parties to draft or review the test questions or to submit to additional polygraph tests. Nor is there any indication that the parties were to be asked the same or similar questions. Nothing in the record indicates that the polygraph examiner failed to conduct the tests in accordance with professional standards or methodology. Opper's only evidence regarding the validity of the testing procedures used is the opinion of another polygraph examiner, not approved by Brotz, stating that she was not a suitable test subject.

After carefully reviewing the polygraph reports, we conclude that both parties were tested on facts pertinent to Opper's allegations of negligence. The questions did not improperly refer to damages or other extraneous matters; they were not so broad as to violate the general terms of the agreement. The polygraph tests performed by Bowers fell within the scope of the parties' stipulation.

## CONCLUSION

For these reasons, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BRESLIN, P.J., and SLATER, J., concur.