# Illinois Official Reports

## Appellate Court

---

**Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas,**
**2013 IL App (1st) 122660**

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. LAW OFFICE OF TUZZOLINO AND TERPINAS, an Illinois Partnership, SAM TUZZOLINO, WILL TERPINAS, JR., and ANTONIO COLLETTA, Defendant-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2660 |
| Filed | November 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant attorney's coverage under the legal malpractice insurance policy issued by plaintiff to defendant law partnership and defendant partners was preserved by the innocent insured doctrine, where the record showed that defendant's culpable partner failed to disclose on a renewal form circumstances he was aware of that might give rise to a malpractice claim against the partnership and the partners, since the severability clause operated to create separate and distinct contracts that the trial court could partially rescind. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-11297; the Hon Rita M. Novak, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | C. Jeffrey Thut, of Roach, Johnston & Thut, of Libertyville, for appellants. |
|---|---|
| | Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Justice Hall and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendants Will Terpinas, Jr. (Terpinas), and Antonio Colletta (Colletta) (collectively, defendants) appeal the trial court's entry of summary judgment in favor of the plaintiff, ISBA Mutual Insurance Company (plaintiff). After considering cross-motions for summary judgment, the trial court rescinded Terpinas' contract with plaintiff. Defendants argue the trial court improperly rescinded the contract because the innocent insured clause in the insurance policy and the common law innocent insured doctrine preserve Terpinas' coverage. For the following reasons, the judgment of the circuit court of Cook County is reversed.

¶ 2                                  BACKGROUND
¶ 3                        I. Underlying Malpractice Litigation
¶ 4    Prior to this litigation, Terpinas and Sam Tuzzolino (Tuzzolino) operated, as partners, the Law Office of Tuzzolino & Terpinas (firm). Between the years of 2002 and 2008, Tuzzolino represented Colletta in several matters on behalf of the firm. In one of these matters, Colletta sought to recover over $1 million from his former partners in a business venture known as Baja Chicago, LLC. Colletta, however, believed Tuzzolino mishandled the Baja litigation and filed a malpractice suit against him. Tuzzolino responded by attempting to persuade Colletta to settle the malpractice suit. Tuzzolino suggested Colletta should drop his current lawsuit and file a separate malpractice claim against the attorney who handled Baja Chicago's bankruptcy. Colletta agreed, settling his pending litigation with Tuzzolino and hiring Tuzzolino to file the new bankruptcy malpractice suit. Tuzzolino, however, failed to file the complaint within the time required under the statute of repose and the case was consequently dismissed.

¶ 5    Over the next 18 months, Tuzzolino led Colletta to believe the bankruptcy malpractice litigation remained pending. Colletta, after checking the court file, learned the case had in fact been dismissed and confronted Tuzzolino with the discovery. In response, Tuzzolino offered Colletta $670,000 to settle any ensuing claims Colletta might have against him.

- 2 -

## II. The Insurance Policy

Following his settlement offer with Colletta, Tuzzolino attempted to renew the firm's current malpractice insurance policy; the firm had been insured by plaintiff since 2005. On April 29, 2008, Tuzzolino submitted a renewal quote and acceptance form to plaintiff on behalf of himself, Terpinas, and the firm. Question 4 on the renewal form asked, "[h]as any member of the firm become aware of a past or present circumstance(s) which may give rise to a claim that has not been reported?" Tuzzolino checked the box marked "no." He then signed the form under the following language:

> "I/we affirm after an inquiry of all of the members of the applicant firm that all the information contained herein is true and complete to the best of my/our knowledge and that it shall be the basis of the policy of insurance and deemed incorporated therein upon acceptance of this application by issuance of a policy."

Terpinas did not sign the renewal form as he was not required to do so. Tuzzolino thereafter sent the form to plaintiff, which received it on May 2, 2008.

Of relevance to this appeal, the malpractice insurance policy contained an innocent insured clause and a severability clause. The innocent insured clause provided:

> "Whenever coverage under this policy will be excluded or lost because of the insured's failure to provide timely notice, the company agrees that such insurance as would otherwise be afforded under this policy, should be applicable with respect to any insured who do not personally fail to give timely notice after having knowledge of the conduct that forms the basis of the claim. All insured covered by this provision must immediately comply with all policy provisions regarding reporting the claim upon learning of the unreported claim."

The severability clause provided:

> "The APPLICATION, and any addendum or supplements and the Declarations, are the basis of the Policy. They are to be considered as incorporated in and constituting part of this Policy. The particulars and statements contained in the APPLICATION will be construed as a separate agreement with and binding on each INSURED. Nothing in this APPLICATION will be construed to increase the COMPANY'S Limit of Liability."

Over a month after the completion of the renewal form, Terpinas received a lien letter dated June 10, 2008 from an attorney hired to represent Tuzzolino in the impending malpractice claims against him. According to Terpinas, this was the first time he became aware of the claims against his partner. Terpinas contends, while he may have had general conversations with Tuzzolino about Colletta's cases, Tuzzolino never revealed to him anything about the Colletta malpractice suits. Terpinas therefore reported this newfound information to plaintiff immediately following his receipt of the lien letter.

## III. Plaintiff's Complaint

On March 12, 2009, plaintiff filed a complaint for rescission and other relief against Tuzzolino, Terpinas, the firm, and Colletta. Count I of the complaint sought rescission of the

entire insurance policy on the grounds that Tuzzolino's withholding of information amounted to a material misrepresentation that voided the contract *ab initio*. Count II of the complaint requested declaratory relief finding plaintiff had no duty or obligation to defend Tuzzolino or the firm in connection with the malpractice claims filed by Colletta.[1] In his response to the complaint, Terpinas brought a counterclaim seeking a declaratory judgment that the insurance policy covered him with respect to Colletta's malpractice suit.

¶ 12                                    IV. Entry of Summary Judgment

¶ 13    On January 25, 2010, plaintiff moved for summary judgment on all counts against the defendants. On June 9, 2010, the trial court entered summary judgment against Tuzzolino with regards to count II, finding plaintiff had no duty or obligation to defend Tuzzolino in Colletta's action against him. In its written order, the trial court reserved ruling on summary judgment as to the other defendants. Subsequently, the firm, Terpinas, and Colletta filed a joint motion for summary judgment. Terpinas additionally filed a separate cross-motion for summary judgment on his counterclaim.

¶ 14    After extensive briefing, a hearing was held regarding the pending summary judgment motions on July 27, 2012. In considering the motions, the trial court stated "[t]here is no Illinois case law exactly on point" and thus proceeded to rely on "general principles of rescission law in Illinois" and a Seventh Circuit decision interpreting Illinois law, *Home Insurance Co. v. Dunn*, 963 F.2d 1023 (7th Cir. 1992). The trial court reasoned "rescission is a doctrine that essentially vitiates an entire contract" and "renders the contract unenforceable." It then acknowledged "there may be some application of the doctrine of partial rescission, but that doctrine essentially applies where *** there's an agreement which basically has separate contracts that constitute a portion of the whole agreement." The trial court then concluded, "[t]his is one contract, and I think it's an indivisible contract." In so concluding, the trial court rejected the defendants' argument that the severability clause operated to make the contract divisible. According to the trial court, "the severability clause and its plain language would prevent a construction that would apply against one of the insureds or one member of the insureds, the insured firm, because that provision itself talks about it being binding as to each insured."

¶ 15    Additionally, the trial court considered the "historic application of *** the insurance code in Illinois" and opined the relevant section, section 154 of the Illinois Insurance Code (215 ILCS 5/154 (West 2008)), was "designed to prevent material misrepresentations in an insurance contract." The trial court added that "[section 154] applies even as against innocent misrepresentations because the very notion of section 154 is that as it applies to certain insurance carriers, it allows the carrier to evaluate the risks that it intends to insure against." Thus, according to the trial court, "[plaintiff] was entitled to evaluate those risks based on the application that was presented to it."

---

[1]Plaintiff amended the complaint on August 25, 2009 by attaching a copy of the lawsuit Colletta filed against Tuzzolino, Terpinas, and the firm.

¶ 16    Finally, the trial court addressed an out-of-state decision, *First American Title Insurance Co. v. Lawson*, 827 A.2d 230 (N.J. 2003), in which the Supreme Court of New Jersey held partial rescission could apply to protect an innocent insured who was unaware of the misrepresentation on the insurance application. In the opinion of the trial court, however, "*Lawson* appear[ed] to be contrary to the vast majority of cases that have construed the remedy or applied the remedy of rescission in a similar context." The trial court instead found two out-of-state federal district court decisions, *Minnesota Lawyers Mutual Insurance Co. v. Hancock*, 600 F. Supp. 2d 702 (E.D. Va. 2009), and *INA Underwriters Insurance Co. v. D.H. Forde & Co.*, 630 F. Supp. 76 (W.D.N.Y. 1985), to be persuasive. The trial court agreed with these two cases that "the equities are lined with the carrier, because *** the carrier is allocating risks in accordance with *** the representations that are made in the policies"; the trial court further believed a court reviewing Illinois precedent would come to the same conclusion. Accordingly, the trial court rescinded the insurance policy in its entirety and found "[plaintiff] has no duty to defend [Terpinas] or [the firm] in [Colletta's malpractice action]." Following the entry of summary judgment, Terpinas and Colletta filed a timely notice of appeal.[2]

¶ 17                                    ANALYSIS

¶ 18    Defendants argue the trial court erred in entering summary judgment against them. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of triable fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In determining whether a question of fact exists, "a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is "a drastic means of disposing of litigation," and thus, should only be awarded when the moving party's right to judgment as a matter of law is "clear and free from doubt." *Id*. We generally review grants of summary judgment *de novo*. *Id*.

¶ 19    Plaintiff argues *de novo* review would be inappropriate in this case because, in granting summary judgment, the trial court ultimately rescinded the contract. As plaintiff accurately notes, rescission is an equitable remedy which " 'lies largely within the court's discretion.' " *Luciani v. Bestor*, 106 Ill. App. 3d 878, 882 (1982) (quoting *Bechard v. Bolton*, 24 N.W.2d 422, 423 (Mich. 1946)). The decision to apply rescission in this case, however, turns on the answer to multiple questions of law, namely, the interpretation of the policy language, the formation of the agreement, and the application of the innocent insured doctrine. "[W]here the exercise of discretion has been frustrated by the application of an erroneous rule of law, review is required to permit the exercise in a manner consistent with the law." (Internal quotation

_____

[2]The law firm, as a separate entity, has not appealed and, other than briefly mentioning so in the heading of section II, the defendants do not argue in their briefs that the law firm's insurance coverage has been preserved.

- 5 -

marks omitted.) *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 274 (1992) (quoting *People v. Brockman*, 143 Ill. 2d 351, 363 (1991)). Our ultimate review of the issues in this case is therefore *de novo*.

¶ 20                                    I. Innocent Insured

¶ 21    Defendants contend the innocent insured clause in the written policy and the common law innocent insured doctrine preserve Terpinas' coverage. We address each of these arguments in turn.

¶ 22                          A. Contractual Innocent Insured Clause

¶ 23    According to defendants, the language contained in the innocent insured clause of the contract acts to preserve Terpinas' coverage. An insurance policy is a contract, and the general rules governing the interpretation of contracts also govern the interpretation of insurance policies. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 24. If the policy language is unambiguous, the policy will be applied as written unless it contravenes public policy. *Id.* We review the interpretation of contractual language *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

¶ 24    Defendants point to section V.I of the policy, entitled "Innocent Insured." Under the plain language of the policy, this section applies "[w]henever coverage *** would be excluded or lost *because of the INSURED'S failure to provide timely notice*." (Emphasis added.) Defendants contend this section operates here because "[i]t is undisputed that [Terpinas'] coverage was lost because Tuzzolino failed to report the Colletta claim on the renewal application." We are not persuaded by defendants' argument.

¶ 25    Defendants attempt to characterize the reason for Terpinas' loss of coverage as a "fail[ure] to report" in an effort to invoke the innocent insured clause of the contract. This argument ignores the distinction between the nondisclosure of a malpractice claim under an existing insurance policy and the nondisclosure of a malpractice claim on the renewal application for a new policy. If this case merely involved the former, Terpinas would remain covered; the record indicates Terpinas provided notice as soon as he became cognizant of his partner's malfeasance and plaintiff does not assert that Terpinas is not covered under the language of the agreement. This case, however, involves the latter. Consequently, plaintiff charges that no such policy exists in the first place because Tuzzolino's misrepresentation in procuring the agreement voided it *ab initio*. Accordingly, the crucial inquiry in this case is not whether the language of the policy covers Terpinas, but whether the common law innocent insured doctrine permits the policy to remain in place as to Terpinas.[3]

---

[3]Defendants rely on *Great American Insurance Co. v. Christy*, 53 A.3d 538 (N.H. 2012), a case from the Supreme Court of New Hampshire, in arguing that the innocent insured clause protects Terpinas in this matter. In *Christy*, the court did not rely on common law doctrine but, rather, found the language of the innocent insured provision of the policy indicated that "the parties intended to distinguish actual from imputed knowledge and not to penalize insureds who did not have actual

## B. Common Law Doctrine

Defendants additionally argue the common law innocent insured doctrine protects Terpinas in this case. The common law innocent insured doctrine applies in a situation where two or more insureds have an insurance policy and one of the insureds commits an act that would normally void the insurer's contractual obligations. See *Economy Fire & Casualty Co. v. Warren*, 71 Ill. App. 3d 625, 629 (1979); *West Bend Mutual Insurance Co. v. Salemi*, 158 Ill. App. 3d 241, 248 (1987). In this situation, the innocent insured doctrine preserves coverage for the innocent insureds where "a reasonable person would not understand that the wrongdoing of a coinsured would prevent recovery under the policy." *State Farm Fire & Casualty Insurance Co. v. Miceli*, 164 Ill. App. 3d 874, 881 (1987); see also *Salemi*, 158 Ill. App. 3d at 248-49. Courts have frequently applied the rule in the situation where one property owner sets fire to mutually owned property without the co-owner's knowledge; in that instance, the innocent property owner may still collect his or her portion of the insurance proceeds. See, *e.g.*, *Warren*, 71 Ill. App. 3d at 629; *Salemi*, 158 Ill. App. 3d at 244; *Wasik v. Allstate Insurance Co.*, 351 Ill. App. 3d 260, 261 (2004). The instant case presents the question of whether the innocent insured doctrine protects an innocent co-insured where a material misrepresentation was made during the formation of the policy.

Defendants argue *Economy Fire & Casualty Co. v. Warren*, the first case to apply the innocent insured doctrine, controls. In *Warren*, a husband and wife co-owned a residence covered by a fire insurance policy with the insurer. *Warren*, 71 Ill. App. 3d at 626. After a seemingly accidental fire caused damage to the residence, the husband and wife settled with the insurer for $20,514.05. *Id.* Later, however, the wife revealed that she set fire to the residence by placing a lit piece of paper in a waste basket. *Id.* The husband maintained he had no knowledge of his wife's actions. *Id.* at 627. Consequently, the insurer sued the husband and wife seeking rescission of the settlement agreement in its entirety and restitution of the proceeds paid. *Id.* at 626. The trial court found the settlement was procured by fraud and rescinded the agreement in full. *Id.* On appeal, the husband argued his innocence of any wrongdoing entitled him to half the proceeds of the settlement. *Id.* at 627. This court agreed, finding "[t]he trial court erred in awarding the plaintiff an equitable lien on the full amount of the insurance settlement." *Id.* at 629. The court reasoned, "[w]e do not think the reasonable person in the position of [the husband] would have supposed that the wrongdoing of his co-insured would be imputed to him." *Id.*[4] As a result, the husband was entitled to keep $10,278.98 of the settlement proceeds. *Id.*

knowledge of wrongful acts." *Id.* at 544. In *Christy*, however, the policy language was noticeably more complex and specifically provided that the insurer "must provide coverage to those insureds who did not 'personally commit or personally participate' in the act, error or omission." *Id.* The language in the policy at issue here specifically limits its protections to the situation where the insured fails to report a potential malpractice claim in a timely manner. We therefore do not find *Christy* to be particularly relevant in deciding the instant case.

[4]Other courts have used similar reasoning in finding coverage for an innocent insured. See, *e.g.*, *Holloway v. Sacks & Sacks, Esqs.*, 275 713 N.Y.S.2d 162, 164 (N.Y. App. Div. 2000) (refusing to

¶ 29 Plaintiff contends *Warren* is distinguishable from this case as *Warren* "did not concern the formation of a policy." According to plaintiff, *Warren* might apply "if Terpinas had been denied a defense because Tuzzolino's alleged [malpractice] was excluded from coverage"; however, because the contract was void *ab initio* due to the misrepresentation made in procuring the policy, *Warren* should not apply. Plaintiff's attempt at distinguishing *Warren* fails for two reasons.

¶ 30 First, plaintiff's argument erroneously casts *Warren* as a case in which the insurer sought to deny coverage under the policy after having learned of the wife's actions. To the contrary, the insurer in *Warren* sued to rescind the settlement agreement and sought restitution of the proceeds paid to the husband and wife that were procured by the wife's fraud. *Id.* at 626. Likewise, the trial court granted rescission of the settlement agreement because it was procured by said fraud. *Id.* Thus, the facts of *Warren* are similar to those of the instant case: rather than seek to deny coverage under the policy, the insurer sought to rescind the contract in its entirety following its discovery of the collective failure of the insureds to reveal the relevant misconduct.

¶ 31 Second, plaintiff incorrectly asserts the misrepresentation made by Tuzzolino voided the contract *ab initio*. To the contrary, "a material misrepresentation *** renders the policy voidable, not void *ab initio*." *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 167 (2004). This is an important distinction because "a contract that is void *ab initio* is treated as though it never existed." *Id.* at 164. "[I]f a contract is merely voidable, a party can either opt to void the contract based upon that defect or choose, instead, to waive that defect and ratify the contract despite it." *Id.* at 164-65.

¶ 32 Plaintiff alternatively relies on a Seventh Circuit decision interpreting Illinois law, *Home Insurance Co. v. Dunn*, 963 F.2d 1023 (7th Cir. 1992). In *Dunn*, an attorney acquired a malpractice insurance policy providing coverage for himself and the 12 other lawyers associated with his firm. *Id.* at 1024. Unbeknownst to the other 12 lawyers in the firm, the attorney had been embezzling funds belonging to the firm's clients; the attorney did not disclose this information to the insurer prior to obtaining the malpractice insurance. *Id.* Upon learning of the embezzlement, the insurer filed a suit seeking to void the policy. *Id.* The parties then filed cross-motions for summary judgment and the trial court ruled in favor of the defendants, finding the 12 other lawyers were innocent insureds. *Id.* On appeal, the Seventh Circuit reversed, finding Illinois law requires rescission of the policy in its entirety. *Id.* at 1026. In so concluding, the *Dunn* court relied on *Ratcliffe v. International Surplus Lines Insurance Co.*, 194 Ill. App. 3d 18 (1990), and quoted the following language:

> "A material misrepresentation will void the contract even though made through mistake or good faith . . . . In other words, it is unnecessary for the insurer to prove that a misrepresentation was made with the intent to deceive if it was material to the risk assumed." (Internal quotation marks omitted.) *Dunn*, 963 F.2d at 1026 (quoting *Ratcliffe*, 194 Ill. App. 3d at 25).

impute the misconduct of an associate to the rest of the firm where there was no evidence the firm had actual or constructive knowledge of the associate's wrongdoing).

Thus, according to the *Dunn* court, the 12 other lawyers' "ignorance of [the] fraud [was] irrelevant." *Dunn*, 963 F.2d at 1026.

¶ 33    The facts of *Dunn* are very similar to the instant case and, if *Dunn* was binding authority, it would likely defeat defendants' appeal. Nevertheless, *Dunn* does not control here. First, as a federal decision interpreting Illinois law, it amounts to at most persuasive authority, that is "unless it runs contrary to previously decided state cases which, if correctly reasoned, will not be overturned." *Falk v. Northern Trust Co.*, 327 Ill. App. 3d 101, 108 (2001). Second, the case *Dunn* relied on, *Ratcliffe*, did not address or involve the application of the innocent insured doctrine. See generally *Ratcliffe v. International Surplus Lines Insurance Co.*, 194 Ill. App. 3d 18 (1990). In *Ratcliffe*, the insureds' argument was that no misrepresentation occurred at all. *Id.* at 25.[5] The court in *Ratcliffe* consequently did not address *Warren* or any other case applying the innocent insured doctrine. Third, the *Dunn* court treated the policy as void *ab initio*, which, as noted above, runs contrary to Illinois case law. Compare *Dunn*, 963 F.2d at 1026, with *Coregis*, 355 Ill. App. 3d at 164-65. Not surprisingly, *Dunn* has not been cited or followed by any Illinois decision to date.

¶ 34    Regardless, according to plaintiff, *Dunn* should control as it "recognizes the distinction between wrongdoing that invokes a policy exclusion and wrongdoing in the very procurement of the policy." This argument mirrors plaintiff's previous attempt at distinguishing *Warren*. Yet, as stated earlier, while *Warren* may not have involved wrongdoing in the procurement of a policy, it did involve wrongdoing in the procurement of a *settlement agreement*. An insurance policy and a settlement agreement are at their core both contracts governed by the same general principles of contract law. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005) ("An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies."); *Haisma v. Edgar*, 218 Ill. App. 3d 78, 87 (1991) ("A settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law."). Thus, for *Dunn* to prevail over *Warren*, plaintiff must demonstrate why a misrepresentation made in obtaining an insurance policy should result in a different application of the innocent insured doctrine as a misrepresentation made in obtaining a settlement agreement. After an examination of public policy in Illinois and other states, we see no reason why *Warren* should not apply to these facts.

¶ 35    Plaintiff generally notes that insurers are innocent parties as well and "to require insurers to honor agreements premised on deceptive accounts of potential exposure would threaten the very concept of insurance coverage." Plaintiff certainly is not incorrect to state that insurers are

---

[5]In *Ratcliffe*, the applicants argued there was no misrepresentation on the policy application because they subjectively did not believe the relevant construction dispute they failed to disclose would have given rise to a claim. *Ratcliffe*, 194 Ill. App. 3d at 24-25. The court disagreed and found that, regardless of their subjective belief, the applicants were required to disclose those "circumstances known *** which [objectively] might have given rise to a claim against them." *Id.* at 26-27. In this case, there is no dispute that a misrepresentation occurred. The relevant inquiry that *Ratcliffe* did not consider is whether the party innocent to the misrepresentation should remain covered under common law doctrine.

- 9 -

likewise innocent of wrongdoing in these cases. Nonetheless, the stated policy of Illinois is to "favor[ ] coverage under an insurance policy whenever the facts justify such coverage." *Inter-Insurance Exchange of Chicago Motor Club v. Milwaukee Mutual Insurance Co.*, 61 Ill. App. 3d 928, 931 (1978). Moreover, the Illinois Supreme Court has generally interpreted the purpose of the relevant section of the Insurance Code, section 154, to favor innocent insureds. Section 154 states:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. With respect to a policy of insurance as defined in subsection (a), (b), or (c) of Section 143.13, except life, accident and health, fidelity and surety, and ocean marine policies, a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less. This Section shall not apply to policies of marine or transportation insurance." 215 ILCS 5/154 (West 2008).

In reviewing section 154, our supreme court declared "section 154 is representative of statutes which 'are designed to relieve against the rigorous consequences of the common-law rules as to warranties and misrepresentations concerning insurance, particularly if made in good faith with no intent to deceive and in relation to a matter which does not increase the risk or contribute to the loss.' " *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 464 (2003) (quoting 43 Am. Jur. 2d *Insurance* § 1034 (1982)). In interpreting Illinois law, the Seventh Circuit has likewise stated "the purpose behind section 154 is to protect insureds from insurance companies seeking to void their policies." *National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357, 363 (7th Cir. 1987).

¶ 36    It is not difficult to see why these policy concerns are particularly important in the specific context of legal malpractice insurance. By the 1980s, the occurrence of malpractice suits against attorneys increased sharply. See Fredric L. Goldfein, *Legal Malpractice Insurance*, 61 Temp. L. Rev. 1285, 1285-86 (1988). Not surprisingly, the need for professional liability insurance has increased as well, prompting some states to even make it a mandatory condition to practicing law. See *id.* at 1296. Of course, while malpractice insurance undoubtedly serves an important purpose in protecting attorneys subject to increased risk and liability, as with other insurer-insured situations, a denial of coverage does not only negatively affect the potential insured. Without coverage, many defendants become unable to pay out the settlements or judgment awards, in effect harming the initially wronged party (in this case, Colletta). *Cf. Erie Insurance Exchange v. Lake*, 671 A.2d 681 (Pa. 1996) (even where insurance contract was found void *ab initio*, the policy could not be rescinded as to the harmed, innocent third party). Thus, while the insurers and insureds may argue over who is the truly

- 10 -

"innocent" party for the purposes of equities, such a focus misses impact on the underlying malpractice litigation.

¶ 37    Cases from other jurisdictions reflect these policy concerns. In particular, defendants cite *First American Title Insurance Co. v. Lawson*, 827 A.2d 230 (N.J. 2003). In *Lawson*, two partners of a three-person law firm engaged in a "kiting" scheme, improperly transferring money from various client accounts into the accounts of other clients and of the firm itself. *Lawson*, 827 A.2d at 233. While in the midst of the kiting scheme, one of the partners who participated in the fraud applied to reinstate the malpractice insurance for the firm and its members. *Id.* at 234. On the application, this partner warranted he is " 'not aware of any circumstances or any allegations or contentions as to any incident, which may result in a claim being made against the firm or any of its past or present owners, partners, shareholders, corporate officers or employees or its predecessors in business.' " *Id.* The third partner of the firm did not participate in the misappropriation of client funds and apparently had no knowledge of his partners' impropriety at the time the application for insurance was filed. *Id.* at 240. Upon discovery of the kiting scheme, the insurer filed a declaratory action to void the policy against the firm and all of its partners. *Id.* at 235. After a trial and subsequent appeal, the Supreme Court of New Jersey held the third partner's coverage should not have been rescinded. *Id.* at 241. The court reasoned the facts of the case "require us to consider [the third partner] an innocent partner for purposes of balancing the equities attendant in these circumstances." *Id.* at 240. According to the court, "voiding the policy in respect of [the third partner] would mean that he no longer would possess coverage for any of his actions in unrelated matters, including simple malpractice, that might have occurred during the period of anticipated coverage," and such a "sweeping result would be contrary to the public interest." *Id.* Specifically, the court noted "it would be inconsistent with the policies underlying our Rules of Court that seek to protect consumers of legal services by requiring attorneys to maintain adequate insurance in this setting." *Id.* at 240-41.

¶ 38    *Lawson*, of course, does not reflect the public policy of Illinois. Nevertheless, given the existing case law regarding the innocent insured doctrine, Illinois courts' overall inclination to protect the insured, and the persuasive authority from other jurisdictions, we find that the innocent insured doctrine preserves coverage for Terpinas under these facts.

¶ 39                                    II. Severability Clause

¶ 40    The parties further dispute the effect of the severability clause and whether Tuzzolino's misrepresentation barred the severability clause from operating in the first place.[6] While we have already found that the innocent insured doctrine applies in this case, this issue warrants discussion as the trial court believed it could not partially rescind the contract because the contract was indivisible. In Illinois, the long-standing general rule has been that "rescission, if made, must be full, and embrace the entire contract." *Bowen v. Schuler*, 41 Ill. 192, 196 (1866). This rule, however, "does not apply to a contract of which the parts are so severable as to form

---

[6]Neither party challenges the validity of the severability clause itself.

independent contracts." *Kaplan v. Keith*, 60 Ill. App. 3d 804, 808 (1978). Defendants thus argue the severability clause of the policy operates to form separate contracts. In determining whether a contract is divisible, as in other aspects of contract interpretation, a court attempts to effectuate the intent of the parties. *Bjork v. Draper*, 381 Ill. App. 3d 528, 544 (2008). We therefore examine the language of the policy. See *Gallagher*, 226 Ill. 2d at 233.

¶ 41  Defendants direct us to the severability clause, which states, "The particulars and statements contained in the APPLICATION will be construed as a separate agreement with and binding on each INSURED." According to defendants, the Illinois Supreme Court interpreted similar contractual language to "provide[ ] each insured with separate coverage, as if each were separately insured with a distinct policy." *United States Fidelity & Guaranty Co. v. Globe Indemnity Co.*, 60 Ill. 2d 295, 299 (1975). Plaintiff does not necessarily challenge this interpretation, but argues while "the clause creates separate agreements with each of [the insureds]," each of these separate agreements still "incorporat[es] the statements in the application, including the false one at issue in this case." Plaintiff cites no authority for this assertion and does not offer any explanation as to why the innocent insured doctrine would still not protect Terpinas under *Warren*.

¶ 42  Moreover, plaintiff's argument necessarily presupposes that the severability clause split the contract into distinct agreements. This contradicts plaintiff's ultimate conclusion that the clause could not operate to cure any defect in the formation because "a material misrepresentation voids the entire policy, effectively preventing it from coming into existence as to any party." In any event, the latter assertion still relies on the mistaken belief that the policy was void *ab initio*. Because the misrepresentation did not void the policy *ab initio*, it follows that the severance clause still operated to create separate contracts until the contract is fully rescinded. See *Coregis*, 355 Ill. App. 3d at 164-65.

¶ 43  Finally, it is important to note that the court in *Warren* did not consider whether the contract was severable in applying the innocent insured doctrine. See *Warren*, 71 Ill. App. 3d at 627-29. By implication, this suggests that when applying the innocent insured doctrine, the court does not necessarily require a divisible contract in order to partially rescind a contract.

¶ 44  Accordingly, we find the severability clause operated to create separate and distinct contracts, allowing the trial court to partially rescind the contract. Further, even assuming the severability clause did not sever the contract, there is no indication from *Warren* that such is a requirement in applying the innocent insured doctrine.

¶ 45                                                    CONCLUSION

¶ 46  For the foregoing reasons, the judgment of the circuit court of Cook County is reversed with judgment to be entered in accordance with the views expressed herein.

¶ 47  Reversed.